## WOOD, Appellant, v. THOMAS J. SMITH.

### Division One, February 22, 1906.

1. **CONVEYANCE: After-Acquired Title.** A warranty deed executed before the patentee obtained his patent conveyed to his grantee his after-acquired title.

2. **TAX DEED: Double taxation: One Actual Payment: Party to Suit: Apparent Owner.** The record does not show whether or not the patent was recorded, but the patentee conveyed the land to defendant, who did not record his deed. The assessor knew the land was defendant's homestead, and when he came to assess it defendant exhibited to him his deed, and the assessor made the assessment against defendant therefrom, but misdescribed the land, and thereafter assessed it against the patentee. Thereafter defendant paid the taxes, the collector at the time correcting the description in the tax receipt, and made entry in his books of payment by defendant. Thereafter, this collector went out of office, and suit was brought against the patentee alone, and judgment obtained and the land sold to plaintiff.

   *Held;* first, that as defendant was not made a party to the tax suit, the judgment therein was not binding on him, and it was permissible for him, in a subsequent suit in ejectment by the purchaser at the tax sale, to show the true facts of the transaction.

   *Held,* second, that the true owner who had returned the land for assessment, to an assessor who knew it was his homestead, and paid the taxes to a collector who knew the same facts and left a record of payment of the taxes in his office, should not be deprived of his land solely on the ground that there was a double assessment, the other being against the apparent owner.

   *Held,* third, if the patent was not recorded, the assessment against the patentee was not made against an apparent owner.

Appeal from Taney Circuit Court.—*Hon. Asbury Burkhead*, Judge.

AFFIRMED.

*Groom & McConkey* for appellant.

(1) The provision of the statute, that suits for back taxes shall be brought against the owner of the land, is fulfilled by bringing the suit against the person who appears from the record to be the owner, in the absence of notice of the fact that such person is not the true owner. State ex rel. v. Sack, 79 Mo. 661; Simonson v. Dolan, 114 Mo. 176. (2) In an action in ejectment against one claiming to be the owner, by a purchaser at the tax sale under a judgment of the circuit court rendered in a suit for back taxes, the sheriff's deed cannot be defeated by showing that the taxes sued for had been paid prior to the institution of the suit and the returning of the land as delinquent, the proceedings being otherwise regular. Hill v. Sherwood, 96 Mo. 125; Jones v. Driskill, 94 Mo. 190; Allen v. McCabe, 93 Mo. 138; Brown v. Walker, 85 Mo. 262; Wellshear v. Kelley, 69 Mo. 343. (3) A purchaser under judgment for the taxes against the person appearing from the record to be the owner of the land, in the absence of notice to the contrary, will be protected in his purchase against the holder of an unrecorded deed from such apparent owner. Payne v. Lott, 90 Mo. 676.

*Price & Ford* for respondent.

The latter half of section 9266 evidently contemplates that lands sold when taxes have been paid can be recovered, as the sale is absolutely void. Huber v. Pickler, 94 Mo. 382; Hampton v. McClanahan, 143 Mo. 501. The payment of a tax destroys the lien of such tax, and renders invalid and void any sale made for the

enforcement thereof. Hodge v. Hubb, 94 Mo. 489; Harness v. Cravens, 126 Mo. 233. Actual notice countervails the effect of registry and dispenses with it. Hodge v. Hubb, 94 Mo. 489. This being ejectment under deed obtained under sheriff's sale for taxes, there is no expressed or implied warranty of title, and the rule of *caveat emptor* applies. Hensley v. Barker, 10 Mo. 157; Carter v. Phillips, 49 Mo. App. 319. The tax suit was against Middleton alone; therefore, only his title could be conveyed. Watt v. Donnell, 80 Mo. 195; Payne v. Lott, 90 Mo. 676. In suits of ejectment plaintiff must rely on the strength of his title or right to possession, and not on the weakness of the defendant's. Siemers v. Schrader, 14 Mo. App. 346; Marvin v. Elliott, 99 Mo. 616; Mather v. Walsh, 107 Mo. 121; Wilkerson v. Eilers, 114 Mo. 245; West v. Bretelle, 115 Mo. 653; Harwood v. Tracy, 118 Mo. 631; Mutherin v. Simpson, 124 Mo. 610.

MARSHALL, J.—This is an action in ejectment for the recovery of the west half of lots 1 and 2 of the northeast quarter, and the southeast quarter of the northwest quarter, and the northeast quarter of the southwest quarter, of section 5, township 22, range 20, Taney county. The petition is in the usual form, and the ouster is laid as of May 2nd, 1902. The answer is a general denial. A jury was waived and the case was tried by the court. No instructions were asked or given. The court made a written finding of fact, apparently on its own motion, for no request therefor is contained in the record. There was a judgment for the defendant, and the plaintiff appealed.

The case made is this:

The plaintiff offered in evidence a patent from the United States to William J. Middleton, dated June 11, 1895, conveying the land in question. The plaintiff then offered in evidence a sheriff's deed, under a judgment for taxes for the year 1896, conveying the interest

of Middleton, the patentee, to the plaintiff Wood, said deed being dated April 30th, 1902.    The plaintiff then introduced evidence tending to show that the defendant was in possession of the land, and showing the value thereof, and then rested.

The defendant read in evidence a warranty deed from said Middleton to the defendant, dated October 3rd, 1894, and filed for record on the 30th of May, 1902. The defendant then read in evidence the entry on the tax book for the year 1896, which was as follows:

"Current No. 1402, William J. Middleton; number of acres 149.30; west half lots 1 and 2, northeast quarter southwest fractional quarter, section 5, township 22, range 20; valuation $205.00; state tax, .51; county taxes, $2.36; total $2.87."

The defendant also read in evidence an entry from the tax book of Taney county for the year 1896, as follows:

"Current No. 1832; Smith, T. J.; number of acres 149.31; west half lots 1 and 2 northwest quarter, and north half lots 1 and 2 northeast quarter, section 5, township 22, range 20; valuation $324.00; State taxes .81; county tax, $3.73; total $4.54; when paid, January 30th, 1897; T. J. Smith." Which was duly signed by the collector of the revenue of Taney county.

The defendant also offered in evidence a tax receipt, dated January 30th, 1897, showing the payment by T. J. Smith of $5.99, on 149.31 acres, for the year 1896, and being the west half of lots 1 and 2 of the northwest quarter, and the east half of lot 2, and the northwest fractional quarter and the northeast quarter of southwest quarter of section 5, township 22, range 20. The defendant then testified that when the assessor came to assess his land, he handed him his deed, and the assessor took the numbers of the land, and assessed it; that when he went to pay the taxes, the collector discovered that the description in the tax receipt did not cor-

respond with the description of the land set out in the deed, and thereupon the collector corrected the tax receipt, so as to make the descriptions correspond, and then the defendant paid the taxes.

The record does not contain an abstract of the files in the taxsuit, but from the whole testimony adduced it is apparent that the suit for taxes was brought against Middleton, as the apparent owner, although there is nothing in the abstract of the record to show whether or not at that time the patent from the government to Middleton had been recorded, or that it has ever been recorded.

The abstract of the record does not show when the defendant entered upon the possession of the property, but it was admitted in open court by defendant that he was in possession at the time the tax suit was brought, and is still in possession, and the finding of fact by the court showed that when the defendant purchased the land from Middleton, he moved on it, and has lived on it and cultivated it ever since. The plaintiff objected to the deed from Middleton to the defendant, on the ground that it was not filed for record until after the plaintiff had purchased the land at the tax sale. The plaintiff also objected to the assessments being offered in evidence, on the ground that such matters would have been a proper defense in the tax suit, but could not be shown in this suit. The court found the fact to be that the defendant was an illiterate man, and that when the assessor went to his place to assess the tax for 1896, the defendant delivered his deed to the assessor, and the assessor undertook to take the description of the land from the deed, but that in so doing he made a mistake and described the north half of lots 1 and 2 of the northeast quarter, and the west half of lots 1 and 2 of the northwest quarter of section 5, instead of describing the east half of lots 1 and 2 of the northeast quarter, and the east half of lot 1, and the southeast quarter of the northwest quarter and the northeast

quarter of the southwest quarter of section 5, and that on the 30th of January, 1897, the defendant paid the taxes that were assessed against the land in question, and received a receipt therefor, which, after correction in the description by the collector, as aforesaid, was the true description of the land owned and occupied by the defendant. And, furthermore, that the taxes on the land erroneously described by the assessor, to-wit, the north half of lots 1 and 2 of the northeast quarter, and the west half of lots 1 and 2 of the northwest quarter of section 5, had not been paid for the year 1896; that the tax suit was against Middleton as sole defendant, and the judgment therein rendered on the 4th of December, 1901, and the land sold on the 30th of April, 1902, to the plaintiff.

The court then found that for the year 1896, there was a double assessment, and that by reason of the illiteracy of the defendant, and the fact that he showed his deed to the assessor, and that the mistake in the description of the land was a mistake of the assessor, and by reason of the payment, by the defendant, of the taxes on the land in question before the tax suit was instituted, the plaintiff acquired no title by virtue of the tax sale, and that defendant, not having been made a party defendant in the tax suit, was entitled to prove the payment in this case. From this judgment the plaintiff appealed.

The plaintiff relies upon the doctrine that the collector in instituting a suit for taxes is only obliged to look to the record of deeds to see who the owner of the property is, and that a judgment for taxes against the apparent owner conveys a good title to the purchaser at the tax sale, as against the true owner, whose deed is not recorded at the date of the institution of the tax sale. That is the doctrine in this State. [Vance v. Corrigan, 78 Mo. 94; Watt v. Donnell, 80 Mo. 195; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Allen v. Ray, 96 Mo. 547; Simonson v. Dolan, 114 Mo. 176;

Weir v. Cordz-Fisher Lumber Co., 186 Mo. 388]. And the same rule is recognized in Moore v. Woodruff (146 Mo. 597).

The question in this case is whether or not the facts bring this case within the meaning and spirit of the rule. The assessor assessed the land for the year 1896 against Middleton, the patentee, and after seeing the deed from Middleton to the defendant, he undertook to assess the same land to the defendant, but made a mistake in the description of the land. As early as January 30th, 1897, when the defendant went to pay the taxes on the land, the collector discovered the mistake in the description and corrected it in the tax bill, and the defendant paid the taxes for the year 1896 on the land in question, according to the correct description then contained in the tax receipt. Both the assessor and collector, at that time, knew that the defendant had purchased the land from Middleton, the patentee, and that he was living on the land as his homestead. As nearly as can be gleaned from the testimony, another collector came into office at some time between the 30th of January, 1897, and the date of the institution of the tax suit, which is not disclosed by the record, but evidently during the year 1901, as the judgment was rendered on December 4th, 1901, and the new collector then instituted suit against Middleton to collect the taxes on the land, for the year 1896, on which the defendant had, on the 30th of January, 1897, paid taxes. The record does not disclose whether the patent to Middleton was recorded at that time, or not. Middleton was made the defendant in that tax suit, and judgment obtained against him, whether by default or not does not appear, and the land was sold and the plaintiff became the purchaser, on April 30th, 1902. Thereafter, on the 31st of May, 1902, and before the institution of this suit, the defendent filed for record the deed from Middleton to himself, dated October 3rd, 1894, which deed antedated the patent of the United States to Middleton, but which,

being a warranty deed, conveyed Middleton's after-acquired title to the defendant.

By reason of the premises there can be no question that the taxes on the land here involved had been paid by the defendant long prior to the institution of the tax suit, under which the plaintiff acquired title. There can also be no question that when the collector corrected the misdescription in the tax receipt, on the 30th of January, 1897, when the defendant paid the taxes on the land, there were then two assessments against the land, one against the defendant and the other against Middleton. The defendant was not made a party to the tax suit, and therefore that judgment is not binding upon him, and it was perfectly permissible for him, in this suit, to show the true facts in the transaction.

The matter resolves itself into this: When the assessor went to assess this land, he found the defendant occupying it as his homestead. The defendant was an illiterate man, and in order to give the assessor a correct description of the land he showed him his deed to the land. The assessor made a mistake in copying the description from the deed. The assessor then assessed this land to Middleton. Thereafter, in January, 1897, when the defendant went to pay his taxes on this land, the mistake in the description was discovered and corrected by the collector, and the defendant paid the taxes for the year 1896, and received from the collector a receipt therefor, which properly described the land owned and occupied by the defendant and involved herein. Thereafter the plaintiff heard nothing more about the matter, so far as the record discloses, until this suit in ejectment was brought. He then learned that his land had been sold for taxes for the year 1896 after he had paid the taxes therefor, under a judgment against Middleton, in a tax suit to which he was not a party. Under the circumstances detailed there can be no difference between fair-minded men that the defendant did all that could be asked of any citizen. He

showed the assessor the deed to the land. He paid the taxes and received a receipt therefor, properly describing the land. He had a right, then, to assume that he had discharged his duty as a citizen. All of the State's revenue officers, including the assessor and collector, then in office, knew that the defendant owned the land, and that he had paid the taxes thereon. Thereafter a new collector was elected and without investigating to see whether the taxes on this land had, in fact, been paid by the defendant on January 30th, 1897, as the books of the collector showed, the new collector instituted suit against Middleton to collect the taxes for the year 1896 on the same land.

It does not appear from the record whether or not the new collector knew that the defendant was in the possession of the land, occupying it as his homestead. The case is presented upon the cold theory that the collector found that the record of deeds showed that this land had been assessed for the taxes of 1896 against Middleton, and that Middleton was the apparent owner of the land. It is true Middleton was the apparent owner of the land, as shown by the records in the recorder of deeds' office, but it is also true that the books of the collector's office showed that the taxes for the year 1896 upon this identical land had been paid by the defendant Smith, on the 30th of January, 1897. Thus, while the books of the recorder of deeds showed Middleton to be the apparent owner, the books of the collector's office showed that the taxes for which the land was sold, had been paid before the institution of the tax suit, by the defendant, Smith. Thus the books of the collector's office gave notice to the collector that the tale told by the books in the recorder of deed's office was not the true status of affairs. It does not appear whether the plaintiff, who purchased at the tax sale, knew that the defendant lived on the land as his homestead, and had paid the taxes for the year 1896 or not, but in

its last analysis it leaves the case in this shape: Whether the true owner, who had returned his land for assessment, and who had paid the taxes, should lose his land on account of a mistake by the assessor in describing the land, and thus making a double assessment; or whether the purchaser at a tax sale, for taxes on the land which had already been paid prior to the institution of the tax suit, and which the books of the collector showed had been paid, should lose the amount he bid for the land at the tax sale, which in this case was, $2.87, with interest and costs, aggregating $13, for a tract of land comprising 149.30 acres, or a little less than nine cents an acre.

## II.

The foregoing is based upon the assumption that the patent from the government to Middleton was recorded in Taney county, and that an examination of the records in the office of the recorder of deeds of that county would have shown him to be the apparent owner. But in this case there is no evidence whatever that the patent to Middleton was ever recorded and no evidence of any entry of the land by Middleton or any one else. Therefore, an examination of the records in that county would not have shown either to the collector or to the purchaser at the tax sale that Middleton was the apparent owner. Hence, in this case there was no apparent owner.

Under these circumstances this case is an exception to the general rule above stated which obtains in this State, and the judgment of the lower court, in favor of the defendant, is right and it is affirmed.

All concur.