CHARTER OAK LAND & LUMBER COMPANY v.
GEORGE BIPPUS, Revived against SARAH A.
BIPPUS, Widow, and JAMES E. BIPPUS, only
Heir of GEORGE J. BIPPUS, Appellants.

### Division Two, December 22, 1906.

1. **SUIT FOR TAXES: In Rem.** Inasmuch as the law requires a suit for taxes to be brought against the owner of the land, the action, in its inception, is not strictly one *in rem*. But after jurisdiction' over the subject-matter has been acquired by suit brought against the owner, thereafter in all its subsequent proceedings, including judgment and execution, it is one *in rem*; that is, the proceedings thereafter are against the property, and not against the owner.

2. ———: **Who is the Owner?** The owner against whom a suit for taxes must be brought is the actual owner if known, or if not known the apparent owner as shown by the record of land titles in the county at the date of commencing the suit.

3. ———: **Sale: Title Acquired.** A purchaser at an execution sale acquires no title to real estate until a deed for it is executed by the proper officer.

4. ———: **Sale But No Deed: Subsequent Sale for Different Taxes: Knowledge of Collector.** In 1887 judgment was rendered against McElroy, the actual and record owner, for taxes for 1879 to 1885, and the land sold under execution in 1888, but the sheriff executed no deed to the purchasers, and his term expiring and he having moved from the State, his successor on September 23, 1891, excuted a deed to the purchasers, who were defendants' grantors. In 1891 suit was brought against the same McElroy as the record owner for the taxes for 1887 and 1888, judgment was rendered, the levy made and the land sold to plaintiff's grantor and a deed was executed on September 23, 1891. *Held*, that the suit for the taxes for 1887 and 1888 was properly brought against McElroy, as the record owner, and plaintiff has the title. It would have been improper to have brought such suit against the purchasers under the first judgment and sale, for no deed having been executed to them, they were not the owners within the meaning of the statutes applicable to tax proceedings. And not being the owners, the fact that the collector and the purchaser at the last sale had knowledge of the prior judgment and sale, does not affect the question as to who was the proper defendant in the last tax suit. The title, in fact, was still in McElroy.

5. ———: ———: ———: **Relation.** While it is true that a deed executed by an officer under execution sale, as to the defendant in the execution and his privies and strangers purchasing with notice, relates back to the date of the sale and vests the title in the grantee named therein from that date, still as no deed had been executed to the purchasers under the first judgment until after the judgment for the taxes for subsequent years had been rendered and sale made, the purchasers at the tax sale had no deed upon which the doctrine of relation could operate, neither were they the owners, within the meaning of the statute applicable to tax proceedings, until such deed was executed.

6. ———: ———: **Presumptive Knowledge of Purchaser.** Purchasers at a tax sale, to whom a deed was not executed, if they claim to be owners of the property, presumptively know that taxes for other years not involved in the suit through which they claim have not been paid, and that such taxes constitute a lien on the property; and if they fail to make known their ownership they will be presumed to have notice of the pendency of a suit against the record owner for the taxes for those years.

Appeal from Stoddard Circuit Court.—*Hon. James L. Fort,* Judge.

AFFIRMED.

*Geo. Houck* and *C. L. Keaton* for appellants.

(1) The tax lien on the land for which it was sold under the judgment in defendant's tax deed to Weber and Jones was a first and paramount lien created by public statute and disclosed by public records and related to the date of levy under the law. R. S. 1879, sec. 6717; R. S. 1899, sec. 7570; R. S. 1899, sec 9187; Fleckenstein v. Baxter, 114 Mo. Mo. 495; Boyd v. Ellis, 107 Mo. 401; Board of Trustees v. Fry & Woods, 192 Mo. 560. The judgment for the taxes was also a lien and partakes of the nature of and is like a mortgage lien. The tax lien is not merged into the judgment. The judgment is simply the conduit through which the tax lien is enforced against the land. R. S. 1879, sec. 6838; R. S. 1889, sec. 7683; R. S. 1899, sec. 9304; Board of Trus-

tees v. Fry & Wood, 192 Mo. 560; Boyd v. Ellis, 107
Mo. 400.   The lien is not merged in the judgment
and does not expire in three years as in the case of gen-
eral judgments.   Fleckenstein v. Baxter, 114 Mo. 494;
Board of Trustees v. Fry & Woods, 192 Mo. 560.   (2)
The State's lien for taxes, the judgment thereon and
the sale under such judgment are all disclosed by pub-
lic records, and the plaintiff and all those through whom
it holds had notice and knowledge of the sale and deed
to Weber and Jones.   Fleckenstein v. Baxter, 114 Mo.
496.   (3) The tax deed to Weber and Jones related back
to the sale made by the sheriff, March 6, 1888, and pass-
ed the title in fee from that date, under Revised Stat-
uaes 1899, section 9305.   Boyd v. Ellis, 107 Mo. 401.   (4)
E. M. Weber and Ligon Jones became the owners in
fee under their purchase at the sheriff's sale and the
sheriff's deed, and were such owners at the institution
of the suit by the collector, Joseph Howell, the same
collector who instituted the first suit and with full
knowledge and notice that Weber and Jones were the
owners.   When they purchased under the judgment in
1888, they "acquired a good title against all prior liens
created by (McElroy), but subject to all the valid tax
liens to which the property was then or subsequently
subject.   The statute . . . required the suit . . .
to be brought against the owner.   The defendant was
the then owner.   The action could not be brought
against (McElroy) who was the owner when the lien
accrued, because his title had previously passed to the
defendant, or to Metheny, under whom he claimed."
Excelsior Springs v. Henry, 99 Mo. App. 453; R. S.
1899, secs. 9302, 9303, 9304, 9305; Burnham v. Manewal,
94 S. W. 520; Land & Lumber Co. v. Franks, 156 Mo.
687; Board of Trustees v. Fry & Woods, 192 Mo. 560.
E. M. Weber and Ligon Jones then as the owners by
relation of their sheriff's deed to date of sale were the
proper and only proper parties defendant to the tax

suit under which plaintiffs claim; as they were not made parties defendant, the tax deed to James W. Buchanan conveyed no title whatever, since McElroy had no title to convey. R. S. 1899, secs. 540, 544 and 9303; Excelsior Springs v. Henry, 99 Mo. App. 450; Perkinson v. Meredith, 158 Mo. 462; Wood v. Smith, 193 Mo. 490; Blevins v. Smith, 104 Mo. 590.

*Ralph Wammack* and *M. A. Gorrill* for respondent.

(1) Proceedings to enforce tax liens are not strictly *in rem,* but are to be proceeded with as ordinary actions against real estate. The judgment must be special, and even on personal service, there can be no personal judgment. The suit is against the land in one sense, and the ownership is a matter of secondary consideration. Gitchell v. Kreider, 84 Mo. 472; Milner v. Shipley, 94 Mo. 106; Stewart v. Allison, 150 Mo. 343. (2) The collector, in instituting a suit for taxes, is only obliged to look to the record of deeds, to see who the owner of the property is, and a judgment for taxes against the apparent owner conveys a good title to the purchaser at the tax sale, as against the true owner, whose deed is not recorded at the date of the institution of the tax sale. Vance v. Corrigan, 78 Mo. 94; Watt v. Donnell, 80 Mo. 195; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Allen v. Ray, 96 Mo. 547; Simonson v. Dolan, 114 Mo. 176; Nolan v. Taylor, 131 Mo. 228; Weir v. Lumber Co., 186 Mo. 388; Wood v. Smith, 193 Mo. 489. It has been held that a purchaser at a tax sale, who is entitled to a tax deed, but who had not procured and recorded it before the commencement of an action against the same land for the delinquent taxes, of a subsequent year, is not the owner of the land, within the meaning of the Revised Statutes 1899, section 7682, requiring such action to be against the owner of the property. Hilton v. Smith, 134 Mo. 499. (3) Not only was D. W. McElroy the apparent

record owner at the time of the second tax suit and sale, but he was the legal owner, as well, for the reason that no deed, at that time, had been executed by the sheriff, conveying McElroy's title to Weber and Jones. It has been uniformly held that a purchaser at an execution sale acquires no title to real estate sold until the deed for it is executed by the proper officers. Land & Lumber Co. v. Franks, 156 Mo. 689; Boyd v. Ellis, 107 Mo. 401.

FOX, J.—This cause is now pending in this court upon appeal from a judgment of the circuit court of Stoddard county in favor of the plaintiff and against the defendant. The judgment is predicated upon an action instituted by plaintiff under the provisions of section 650, Revised Statutes 1899, to ascertain and define the title as between the plaintiff and the defendant to the northeast quarter of section 25, township 24, range 12 east, situate in Stoddard county, Missouri. The land in controversy is wild unimproved timber land, and the legal title is alone before the court for determination.

The record discloses that there is no dispute as to the common source of title, both parties claim through execution sales enforcing tax judgments against David W. McElroy, who was the owner of the land. This history and origin of the deeds through which both respondent and appellants claim title to this land may thus be briefly stated:

On September 10, 1887, a judgment was rendered against David W. McElroy, owner of the land now in controversy, for the taxes against said land for the years 1879 to 1885 inclusive, and special execution was issued upon such judgment November 1, 1887, returnable to the March term, 1888. The land was levied upon December 16, 1887, and sold on March 6, 1888. E. M. Weber and Ligon Jones became the purchasers of the

land at such sale; however, the record discloses that the sheriff did not execute a deed to the purchasers, E. M. Weber and Ligon Jones. After the term of the sheriff who made such sale had expired and he had removed from the State, the then acting sheriff on the 16th day of September, 1891, executed as the successor to the sheriff in office at the time the sale was made, a deed to the land in controversy. This deed was acknowledged on the 23rd day of September, 1891, in open court at the September term, 1891, of said court. This deed was not recorded until the 16th day of November, 1891, in book "Y" page 481 of the land records of Stoddard county, Missouri. Ligon Jones and E. M. Weber executed a quit-claim deed dated February 20, 1902, conveying all their right, title and interest to the land in controversy to George Bippus, the original appellant in this cause. It is under these conveyances that the appellants claim title.

The taxes on this land were not paid for the years 1887 and 1888, and David McElroy still being the record owner of said land, the collector, for the purpose of enforcing the State's lien for such taxes of 1887 and 1888, brought a suit against said McElroy, returnable to the March term, 1891, of the circuit court of Stoddard county, Missouri, and a judgment was rendered on March 1, 1891, for the taxes heretofore stated, for the years 1887 and 1888, and execution was issued upon such judgment for the purpose of enforcing the lien therein declared, returnable to the September term, 1891, and said land was sold as the property of David W. McElroy on September 17, 1891. At such sale James W. Buchanan purchased the land; the sheriff accordingly on September 17, 1891, executed a deed conveying to him the land sold. This deed was acknowledged in open court on the 23d day of September, 1891, and was placed on record September 26, 1891, in book 2, page 4, of the land records of Stoddard county. On

September 28, 1900, James W. Buchanan and wife and John R. Reddick and wife by warranty deed conveyed the land in controversy to T. E. Griesa. This deed was recorded September 29, 1900, in book 33, page 168, of the land records of Stoddard county. On July 14, 1901, T. E. Griesa and wife, by warranty deed, conveyed the land in controversy to the respondent in this cause, the Charter Oak Land & Lumber Company, which deed on the 27th day of July, 1901, was recorded in book 15, page 589, of the land records of said county. It is under and by virtue of these conveyances that plaintiff claims title to the land in controversy.

At the close of the evidence the court gave the following declaration of law at the request of the defendant:

"The court declares the law to be that if the court find and believe from the evidence that the defendant, Geo. Bippus, holds and claims title through and by virtue of a sale of the land in controversy under a proceeding to foreclose and enforce the lien for unpaid taxes assessed against said land against the record owner thereof, then the court will find that defendant's claim and title relates at least to the date of judgment in that behalf and constitutes a superior and paramount title. If the court finds that plaintiff's title has emanated from proceedings subsequent thereto, and said proceedings for delinquent taxes being manifested by public record, then the court will find that plaintiff, and all others taking title subsequent to said judgment, took with notice, and the court will find for the defendant, Bippus, and enter a decree accordingly."

The abstract of record filed by appellants and now before us discloses that after the giving of such instruction the court in the first instance found for the defendants; subsequently this finding was changed by the court and a finding was made for the plaintiff and a decree and judgment entered accordingly. A timely

motion for new trial was filed by the defendant and by
the court overruled, and from the judgment and decree
entered in the cause this appeal was in due time and
proper form prosecuted to this court, and the record
is now before us for consideration.

OPINION.

It is apparent from the record in this cause that
there is but one question to be determined, and that
is which of these parties to this proceeding acquired
title to the land in controversy under the tax judgment
as heretofore indicated in the statement of this cause.
The two conflicting contentions of appellants and re-
spondent in this proceeding may thus be briefly stated:

On the part of the appellants it is contended that
the deed executed by J. R. Barham, sheriff of Stoddard
county, Missouri, as successor to D. W. Sanford, on
September 16, 1891, predicated upon a judgment for
taxes against David W. McElroy on the 10th day of
September, 1887, and a sale in pursuance of said judg-
ment made on the 6th day of March, 1888, conveyed
the title to the land in controversy to E. M. Weber and
Ligon Jones, which was by them subsequently convey-
ed to the appellants in this cause.

On the part of the respondent it is insisted that
the taxes of 1887 and 1888 not having been paid, consti-
tuted a lien upon the land in controversy; that the col-
lector instituted a suit to enforce the lien of the State,
and that he had the right to maintain a proceeding to
enforce such lien for such taxes. That at the date of the
commencement of the suit the land in controversy
was assessed in the name of David W. McElroy
and that he was at the time of the institution of
the suit the record owner and the only proper party
against whom such proceeding could be maintained for
the enforcement of the State's lien for the taxes of 1887
and 1888. It is also insisted that the judgment rend-

ered on April 6, 1890, against McElroy for the taxes of 1887 and 1888 was a proper judgment and that E. M. Weber and Ligon Jones not having received a deed for said land under their purchase in pursuance of the tax judgment of 1887, were not either proper or necessary parties to the proceeding to enforce the State's lien for the taxes of 1887 and 1888, and said Weber and Jones not having received any deed to said property under their purchase either at the time of the commencement of the suit by the collector for the taxes of 1887 and 1888 nor at the time of the rendition of the judgment or the sale in pursuance of the judgment, and not having their deed recorded until the 16th day of November, 1891, the sale of the land in controversy under the tax judgment of April 6, 1890, and the deed executed in pursuance of such sale to James W. Buchanan, conveyed to him the legal title to the land in controversy, and his title through *mesne* conveyances having been lodged in the plaintiff in this cause, the judgment of the trial court was strictly in accord with the law applicable to this cause.

The legal propositions disclosed by the record before us necessitates a brief review of the law applicable to proceedings by the State to enforce its lien for taxes against the land upon which such taxes have been assessed. A proceeding to enforce the lien of the State for taxes is not one strictly *in rem,* but is fully recognized by reason of the nature and character of the proceeding, and the judgment authorized to be entered, as one in the nature of an action *in rem.* As was said in the case of Hilton v. Smith, 134 Mo. l. c. 508: "The statute requires the suit to be brought against the owner of the land charged with the lien of the State for taxes. For this reason the proceedings are not strictly *in rem;* but after jurisdiction of the subject-matter is acquired the proceedings are against the property. It is said in Allen v. McCabe, 93 Mo. 144: 'It must be remembered

Land and Lumber Co. v. Bippus.

that, although the statute makes it necessary that the owner of the property should be made a party, and this is necessary to call into activity the jurisdiction of the court over the subject-matter; yet, when this is done, the proceeding is *in rem* against the property to enforce the lien of the State on that property, subordinate to which the owner holds his title; the judgment is *in rem*. The execution goes against, and the sheriff sells, the property, and not the interest of any particular person in it. And his deed conveys, in the language of the statute, ''a title in fee to the purchaser'' ' '' It is well settled in this State that the owner against whom suit must be brought and thereafter prosecuted, ''is the actual owner if known, or if unknown the apparent owner as shown by the record of land titles in the county;'' and as was said in Hilton v. Smith, supra: ''The law points the revenue officers of the State to these records for the evidence of ownership upon which to base their official action. The ownership includes all persons who have known or recorded interests in the land at the time the suit is commenced. The date of commencing the suit is the time fixed for determining the ownership.''

It is no longer an open question in this State that the officers in suits wherein it is sought to enforce the lien of the State for taxes, in the absence of notice to the contrary, may look to the record of deeds to see who the owner of the property is, and a purchaser under the judgment in such suits against the record owner, in the absence of notice that such person against whom the suit was brought was not the true owner, would be protected in his purchase against the holder of an unrecorded deed from such apparent record owner. [Vance v. Corrigan, 78 Mo. 94; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Allen v. Ray, 96 Mo. 547; Nolan v. Taylor, 131 Mo. l. c. 228; Hilton v. Smith, 134 Mo. 499.]

In Allen v. Ray, supra, the principle upon which the foregoing cases rest, is very clearly stated. That is: "That every person not having actual notice as to who is the real owner of lands, has a right to rely upon the records provided by law to be kept for the purpose of showing that ownership; to give notice of that fact is the object of their existence. The law points the revenue officers of the State to these records of the evidence of ownership, upon which to base their official action in the assessment and collection of the revenue, and keeps them open for the inspection of the citizen, that his individual action may be guided thereby, and will uphold the action of either when based thereon in good faith without better information."

It is insisted by appellant that the tax proceeding instituted by the collector for the collection of the taxes of 1887 and 1888 should have been brought against Weber and Jones, the purchasers at the sale under the judgment of 1887; in other words, that Weber and Jones were the owners of the property and therefore a judgment against David W. McElroy and a sale in pursuance of such judgment was inoperative to convey any title to the real estate in controversy. We are unable to give our assent to this insistence. It is the settled law of this State and has been uniformly held by this court that a purchaser at an execution sale acquires no title to real estate until the deed for it is executed by the proper officer. [Land & Lumber Co. v. Franks, 156 Mo. l. c. 689; Boyd v. Ellis, 107 Mo. 394, and cases cited.] So far as the record in this case discloses, at the time of the institution of the suit by the collector against David W. McElroy to enforce the lien of the State for the taxes of 1887 and 1888, the land was assessed to David W. McElroy, and he was the record owner, and there was an entire absence of any indication in the land records of the county, either at the time of the commencement of the suit, or at the time

the judgment was rendered and the sale made in pursuance of such judgment, or at the time of the execution of the deed to the grantee through whom the plaintiff claims, that Weber and Jones, or any one else except McElroy, had any title to the property in controversy, or made any claim to ownership of such property. It follows, therefore, if the cases herein cited truly state the law, that a purchaser at an execution sale acquires no title to real estate sold until the deed for it is executed by the proper officer, then we are unable to conceive how Weber and Jones at the commencement of this suit, with no deed upon record and in fact with no deed even executed and not in the actual possession of the land in controversy, could have been treated by the collector as the true owners of this property, and against whom his suit would have to be brought. It is insisted by appellants that the collector commenced this proceeding with notice of the prior tax judgment enforcing the lien of the State for the taxes of former years and that the plaintiff's grantor purchasing at the sale under the judgment of April 6, 1890, also made such purchase with notice of such prior judgment; therefore, even though no deed was executed to Weber and Jones until long after the institution of the suit and the rendition of judgment, and no deed recorded to them until November 16, 1891, such sale was inoperative to pass any title to plaintiff's grantor to the land in controversy. In support of this contention our attention is directed to that line of cases which very properly and correctly hold that where a deed is executed by an officer under an execution sale, so far as the defendant in the execution and his privies are concerned and strangers purchasing with notice, it relates back to the date of the sale and vests the title in the execution purchaser from that time. It may be conceded for the purposes of this case that the collector as well as the purchaser had notice of such prior judg-

ment and that the land in controversy had been sold in pursuance of such judgment and that Weber and Jones were the purchasers at such sale, still no deed having been executed to them under such purchase, in contemplation of the law applicable to tax proceedings, they would not be such owners of the property as would authorize the collector to make them parties to a proceeding to enforce a subsequent lien of the State for the taxes of 1887 and 1888. Take this case, and the record discloses that the taxes of 1887 and 1888 was a lien upon the land in controversy. The collector of the revenue was required to enforce such lien. This leads us to the inquiry as against whom must he institute the proceeding in order to obtain jurisdiction of the subject-matter? As heretofore pointed out, the suit for the enforcement of the lien must be brought against the owner, and while the collector may have known that, at a sale enforcing a prior lien for the taxes against this land, Weber and Jones purchased the same, he also knew that they had received no deed in pursuance of such purchase, and, as has been uniformly held by this court, they had acquired no title to said land at the commencement of the suit to recover the taxes of 1887 and 1888; hence the collector could not maintain the proceeding against them, and, we repeat, they were neither proper nor necessary parties, and it certainly will not be contended that, because the collector knew that they had made a purchase at a prior sale, it was incumbent upon him to see that the title was perfected in them so as to enable him to bring the suit. He was not required to take any such steps in order to have the title vested in Weber and Jones. There was an existing lien on this land for the taxes of 1887 and 1888; the collector had the right to enforce such lien, and, having no notice that any one else had title to such property, and in fact no one else having acquired by proper conveyances a

title to the same, he properly instituted the suit against the record owner.

With the well-recognized rule that when the officer executes his deed in pursuance of a sale, so far as the defendant in the execution and his privies are concerned, and strangers purchasing with notice, the deed relates back to the date of the sale, and vests the title in the execution purchaser from that time, we are entirely satisfied; but as applicable to this case, in order to entitle the defendants to invoke the doctrine of relation it was essential at least that they have an instrument upon which the doctrine of relation could operate conveying the title to the property at the commencement of the suit, as well as at the time of the rendition of the judgment and sale of the property thereunder. It was the duty of the collector to enforce the lien for the taxes of 1887 and 1888 against this property, and he could not, under the disclosures of the record in this cause, maintain the suit against Weber and Jones, for it is manifest that at that time they had acquired no title to the property in controversy, for the reason that no deed had been executed to them in pursuance of their purchase. If Weber and Jones were claiming to be the owners of this property presumptively they knew that the taxes of 1887 and 1888 had not been paid and constituted a lien upon such property, and we fully concur in the views as expressed by MACFARLANE, J., in the case of Hilton v. Smith, that "persons who have neglected to make known their ownership, by record, or otherwise, will be presumed to have notice of the pendency of the suit and will be bound by the judgment therein. The suit proceeds against the property, and the collector is not required to add and bring in new parties as they make their interests known. One holding an unrecorded instrument affecting the title to the land should not be allowed to defeat the objects of the law and obstruct the collection of the revenue by filing

it for record before judgment or sale.  This principle has been applied to condemnation proceedings.  [Kane v. Railroad, 112 Mo. 38.]''

Upon the propositions involved in this case our attention is directed to the cases of Boyd v. Ellis, 107 Mo. 394, and Fleckenstein v. Baxter, 114 Mo. 493, and it is earnestly insisted by counsel for appellants that the rules of law announced in those cases are decisive of the case at bar.  We are unable to agree with counsel for appellants as to the application of the propositions decided in those cases to the question disclosed by the record in the case at bar.  This insistence necessitates a brief review of those cases.  In Boyd v. Ellis, the collector brought two suits to enforce the State's lien for taxes and in 1879 judgment was rendered in such suits and the sale enforcing the lien of the State in such suits was made in 1880, but the deed was not executed to the purchaser or the assignee of the purchaser until November 16, 1885.  The plaintiff in that action, subsequent to the rendition of the tax judgments and the sale made in pursuance of them, obtained a deed from the owner of the property on August 15, 1885, and commenced his suit in ejectment against the defendant, who was in possession of the land under the tax judgment, on the 18th of August, 1885.  In that case it was held, and properly so, that the sheriff's deed was entitled to priority and conveyed the title to the premises.  BLACK, J., in speaking for the court upon the disclosures of the record, thus stated the law:  ''The title did not pass to the purchaser at the tax sale, until the execution of the deed to him as his assignee.  But the law is well settled that a sheriff's deed relates back to the sale as against the defendant in the execution, those in privity with him, and strangers with notice.  [Porter v. Mariner, 50 Mo. 364; Leach v. Koenig, 55 Mo. 451; Ford v. French, 72 Mo. 250; Lewis v. Curry, 74 Mo. 49.]  The sheriff's deed, therefore, has

the priority, not only because it relates back to the sale, but also because the tax lien was paramount to all other liens and claims. Nor is it any objection that the deed was made after the commencement of the suit. [Porter v. Mariner, supra.]''

In Fleckenstein v. Baxter, Judge BLACK again thus stated the proposition under consideration and the law applicable to it. He said: ''The question made on this record is, whether the plaintiff purchased with notice of the sheriff's deed. The taxes were assessed against the land while Charles Schloegel was the owner, and he continued to be the owner when the tax suit was commenced and the special judgment obtained against him. The sheriff's deed based on that judgment bears date March 22, 1882, but was not recorded until two months after the plaintiff received his deed from Schloegel. The unpaid taxes constituted a lien on the land, and this lien was prior and paramount to all other liens. It was created and disclosed by public records, and the plaintiff purchased with notice of it and of the judgment enforcing it. This tax lien was not merged into a judgment lien so as to expire in three years as in case of a general judgment. [Boyd v. Ellis, 107 Mo. 398.] The plaintiff purchased with notice of the tax lien and the special judgment enforcing it, and he was bound to go further and see whether that judgment had been satisfied, and this inquiry would have disclosed the execution sale. He, therefore, took with notice of that sale and is bound thereby. As between him and those holding under the sheriff's deed, he had notice of the sheriff's sale. Had the sheriff failed to execute the deed until after the plaintiff purchased, still the deed when executed would relate back at least to the date of the judgment, and thus cut out plaintiff. [Boyd v. Ellis, supra, and cases cited.]''

It is sufficient to say of those cases that they properly and clearly apply the law to the questions dis-

closed by the record and which were then before the court for consideration. The distinguishing features in the record in those cases from those in the record in the case at bar now before us, clearly mark the distinction between them, and satisfactorily demonstrate that those cases which are chiefly relied upon by appellants are by no means applicable to or decisive of the question presented in the case at bar. It must not be overlooked that in the cases urged upon our attention the parties seeking to recover the property predicated their claim upon a voluntary deed to the land from the owners subsequent to the tax judgment against said land and a sale in pursuance of such judgment. It was correctly held that such deeds were accepted with notice of the prior and paramount lien of the State and with everything that was done in connection with the enforcement of such lien, but in the case at bar we are dealing with an entirely different state of the record. The plaintiff in this case is not claiming through any voluntary deed by the owner of the land in controversy subsequent to the rendition of a tax judgment and the enforcement of the State's lien for taxes due upon the land, but is claiming under a valid judgment and sale enforcing a subsequent lien of the State which was permitted to accrue by those interested in the property; and, it makes no difference, as applicable to the record in this case, whether the purchaser at the sale enforcing the lien of the State for the taxes of 1887 and 1888 had notice of the prior judgment and sale in pursuance thereof or not; so long as such prior judgment and sale had not resulted in vesting the title to the property in some one else, the suit for the enforcement of the subsequent lien was properly instituted against the record owner, and, in our opinion, the rights of the purchaser at such sale under such subsequent judgment should be protected. As was expressly ruled in Hilton v. Smith, if Weber and Jones had any claim to this property by

reason of their purchase at a prior tax sale and neglected to perfect their rights to such property under such sale and make known their .claim, by record or otherwise, they should be presumed to have notice of the pendency of the suit to enforce by the collector a subsequent lien permitted to accrue, and should be bound by the judgment in that proceeding.

The lien of the State for the taxes of 1887 and 1888 was permitted to accrue, and unrecorded claims of the nature and character of those held by Weber and Jones existing at the time of the institution of the suit for the enforcement of such lien, as well as at the time of the rendition of judgment and sale of the property in controversy, should not be permitted to defeat the objects of the law and delay or obstruct the collection of the revenue by undertaking to infuse into such claim the life of a title to the land and filing it of record long subsequent to the institution of a suit to enforce the State's lien and a judgment and sale in pursuance thereof.

The conclusions reached in this case, as herein indicated, are in no way in conflict with the cases of Wood v. Smith, 193 Mo. 484; Blevins v. Smith, 104 Mo. 583, nor with any other cases decided by this court in which the principles applicable to the propositions involved in this proceeding were discussed. In Wood v. Smith, supra, it was held that the tax judgment was not binding upon the defendant, and that while the deed records of the recorder's office disclosed that the defendant was the record owner, yet the other public records, the tax books, to which the officers, whose duty it was to enforce the lien of the State, had access, disclosed that the defendant against whom the tax proceeding was instituted, was not the true owner, therefore the officers having notice of who was the true owner, it was their duty to make him a party to the

proceeding, and the defendant in that case, who was the true owner, had the right to be heard and disclose all the facts connected with the transaction. To the same effect was Stuart v. Ramsey, 196 Mo. 404, where the subject of the conclusiveness of a judgment against the true owner who was not made a party to the tax proceeding, was thoroughly reviewed by Judge GANTT, and it was expressly ruled that under the facts disclosed in that case the collector knew that a third person owned the land under an unrecorded deed, and that the facts were sufficient to put the purchaser upon inquiry as to whether the record owner against whom the tax proceeding was brought had previously conveyed the property, and having notice as to who the true owner of the land was, it was the duty of the collector to institute the proceeding against him and that the purchaser at such sale against the record owner alone, under the facts disclosed in that case, acquired no title. That is not this case. The record discloses that while there was a judgment and sale undertaking to enforce the lien of the State and at such sale Weber and Jones were the purchasers of the land in controversy, it is also disclosed that no deed was executed to them conveying the land in pursuance to such purchase until long subsequent to the commencement of the suit, as well as the rendition of the judgment and the sale in pursuance of such judgment, in the tax proceeding wherein plaintiff's grantor became the purchaser; hence, it logically follows, in harmony with the ruling by this court, as herein indicated, that at the commencement of the tax proceeding for the taxes of 1887 and 1888, as well as at the time of the rendition of the judgment and sale in pursuance thereof, David W. McElroy had not at that time been divested of his legal title by a duly executed deed from the proper officer conveying the same in pursuance of the tax judgment of 1888; therefore it must be held that said McElroy

was the only party against whom this suit could be brought and that Weber and Jones at that time having no title to the property in controversy, were neither proper nor necessary parties; and, as ruled in Hilton v. Smith, it must be presumed that they had notice of the pendency of that proceeding and must be held bound by the judgment rendered therein.

The decree and judgment of the trial court was manifestly correct and for the right party and should be affirmed, and it is so ordered.

All concur.