206 P.2d 547

**DURELL v. MILES, Commissioner of Public Lands, et al.**

No. 5177.

Supreme Court of New Mexico.
May 17, 1949.

Hannett & Hannett, Albuquerque, Howard F. Houk, Santa Fe, for appellant.

Joe L. Martinez, Attorney General, Seth & Montgomery, Santa Fe, Wm. R. Federici, Santa Fe, George A. Graham, Santa Fe, for appellees.

BRICE, Chief Justice.

This is an action brought by the plaintiff (appellant) under and by virtue of Section 8-1116, N.M.Sts.1941, against the

Commissioner of Public Lands of the State of New Mexico and other defendants named, to compel the Commissioner of Public Lands to rescind a cancellation of oil and gas leases numbered E–181, Assignment 5, and E–182, Assignment 1, theretofore standing in the name of plaintiff, and to reinstate said leases in the name of plaintiff at no increase in rental.

The district court cancelled two leases issued to defendants Salazar and Wollard, covering certain of the lands theretofore held by plaintiff under lease No. E–182, Assignment 1, but refused to reinstate plaintiff's leases with no increase in rental. The district court refused to disturb any of the other leases issued to other parties covering the property formerly held by plaintiff under leases E–181, Assignment 5, and E–182, Assignment 1. It likewise refused to reinstate the plaintiff's leases at no increase in rental. From this decree this appeal has been perfected.

The facts material to a decision are in substance as follows: The plaintiff is a resident of Providence, Rhode Island, and the defendant John E. Miles, Commissioner, was the Commissioner of Public Lands of the state of New Mexico; Leo E. Schutz was the supervisor of the oil and gas department of the state Land Office and was authorized to act for the commissioner in the matters pertaining to oil leases.

On February 15, 1945, the defendant Miles, Commissioner, issued a state oil lease No. E–182 to Henry Caudill and Esther E. Caudill, and on April 12, 1946, the Commissioner issued state oil lease E–181 also to the Caudills, a portion of each of which was assigned to the plaintiff. The annual rental provided for in the lease was 5¢ per acre payable on the 15th day of February of each year, including the year 1948.

The rental payments became delinquent on February 15, 1948, and written notices were mailed by the Commissioner, addressed to plaintiff and received by him on April 1, 1948, and April 8, 1948, respectively; which notices set forth the statutory requirement that the leases would be cancelled unless payments of rentals were received in the land office within thirty days from the date of the notices. The following provisions appear in the lease:

"13. Upon failure or default of the lessee or any assignee to comply with any of the provisions or covenants hereof, the lessor is hereby authorized to cancel this lease and such cancellation shall extend to and include all rights hereunder as to the whole of the tract so claimed, or possessed by the lessee or assignee so defaulting, but shall not extend to, or affect the rights of any other lessee or assignee claiming any portion of the lands upon which no default has been made, provided

however, that before any such cancellation shall be made the lessor shall mail to the lessee or assignee so defaulting, by registered mail addressed to the post office address of such lessee or assignee, as shown by the records of the State Land Office, a notice of intention of cancellation specifying the default for which cancellation is to be made, and if within 30 days from the date of mailing said notice the said lessee or assignee shall remedy the default specified in said notice, cancellation shall not be made.

"14. All the terms of this agreement shall extend to and bind the heirs, executors, administrators, successors and assigns of the parties hereto."

On April 9, 1948, the plaintiff wrote the defendant Miles, Commissioner, requesting additional time within which to pay the rentals on the leases; and on April 13, 1948, the defendant Miles, Commissioner, wrote plaintiff the following letter:

"Mr. Thayer Durell
  "1208 Union Trust Bldg.
  "Providence R. I.
"Dear Mr. Durell:

"With reference to your letter of April 9th and the cancellation of your various leases. According to our laws, if rental is not paid when they become due, they must be cancelled within ninety days from due date.

"So if rental is paid within ninety days from date rental is due, the leases will *not* be cancelled, altho our cancellation notice specifies thirty days from date of the registered notice.

"Yours very truly,
      "John E. Miles, Commissioner of
          Public Lands
      "s/  Leo E. Schutz
      "Supervisor Oil and Gas Department."

Thereafter, on May 14, 1948, plaintiff's leases and assignments were stamped "Cancelled" by a clerk in the Land Office, but dated May 15, 1948. May 14th was on Friday and the Land Office was closed at the end of business on that day, following a business custom, and not opened for business until the following Monday morning.

The plaintiff sent the rentals due by air mail on the 13th day of May, 1948, from Providence, Rhode Island, addressed to the defendant Miles, Commissioner, at Santa Fe. The rentals were stamped "Received" in the Land Office on the morning of May 17, 1948, the first regular business day after the expiration of ninety days from February 14, 1948. The ninety days expired on May 16, 1948, which was a Sunday. The plaintiff had all day the following Monday, the 17th, in which to make payment. Sec. 1-202(7th) N.M.Sts. 1941.

On May 17, 1948, applications for leases were filed by defendants Salazar, Wollard, Cornell, Pugh, and Lawry, which included lands covered by plaintiff's leases. Leases were made to them, each covering a portion of the lands previously leased to plaintiff. There was no fraud either actual or constructive on the part of the defendant Miles, Commissioner of Public Lands, in cancelling the leases, or in re-leasing the lands to others.

This action was brought by authority of the following statute:

"The commissioner is hereby authorized to cancel any lease issued as provided herein for nonpayment of rentals or nonperformance by the lessee of any provision or requirement of the lease; Provided, however, that before any such cancelation shall be made the commissioner must mail to the lessee or assignee by registered letter, addressed to the post-office address of such lessee or assignee shown by the records of the office of the commissioner, a notice of intention to cancel said lease, specifying the default for which the lease is subject to cancelation, and if within thirty (30) days after the mailing of said notice to the lessee or assignee he shall remedy the default specified in such notice, then no cancelation of the said lease shall be entered by the commissioner but otherwise the said cancelation shall be made and all rights of the lessee or assignee under the lease shall thereupon terminate. The mailing of the notice as provided in this section shall constitute notice of the intention of the commissioner to cancel the lease and no proof of receipt of such notice shall be necessary or required. All notices required to be given hereunder on account of failure to pay rentals shall be mailed within ninety (90) days after said rentals shall have become delinquent, * * *." N.M.L.1945, ch. 113, Sec. 1.

■ This action is against the state, but the state has not only waived its immunity, but has consented to be sued in a court of equity in which equitable principles must control. That is our interpretation of this statute. That the plaintiff was misled into believing that payment of rentals made within ninety days after the due date would be legal and satisfactory, there can be no doubt.

■ Whether the Commissioner of Public Lands has discretion to recall a notice of cancellation of a lease after the expiration of thirty days after issuance of notice had expired and before actual cancellation, need not be decided. But that he can re-instate the lease after that date and before actual cancellation, seems to be the import of Orcutt v. Nichols, 32 N. M. 369, 257 P. 998. But whether he can or not, he is given a discretion to cancel leases for nonpayment of rentals ranging from thirty to one hundred and twenty

days after default. Within this limited time, he has authority to recall any notice of cancellation prior to the date fixed for cancellation if the ninety day statutory limit for giving notice has not expired. Whatever the reasons may have been for the writing of the Commissioner's letter suggesting to the plaintiff that the lease would not be cancelled until the expiration of ninety days after the due date of the rentals, it was within his discretion to withdraw the notice, and his letter had that effect.

But it is said that it was an honest mistake of law on the part of the Commissioner and that an estoppel against the state would not apply under such circumstances. Whether the state would have been estopped in this particular case if estoppel only was necessary to a decision in favor of the plaintiff, need not be decided. But we do not subscribe to the assertions of the defendants that a mistake of law is never ground therefor.

"* * * While it is laid down that 'a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts,' yet 'the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases, is certainly

more in consonance with the best considered and best reasoned cases upon this point, both English and American.'" Griswold v. Hazard, 141 U.S. 260, 11 S.Ct. 972, 35 L.Ed. 678.

"The trend of judicial opinion in modern times is towards the modification of the old rule that equity will give relief only against mistakes of fact, as distinguished from mistakes of law. This is evidenced by the many cases in which equitable jurisdiction is entertained for relief against mistakes of law, sometimes on the express ground that such mistakes are as much a subject for equitable relief as mistakes of fact, or that it is immaterial whether the mistakes are of fact or of law, and sometimes on the theory that the particular mistake of law is of a character for which equity will give relief, though it ordinarily would not; and the cases in which the courts have displayed a marked inclination to regard a mistake as one of fact wherever it is doubtful that it is one of law. In proper cases relief has been given although the parties knew what words were employed and their ordinary meaning.

\*    \*    \*    \*    \*    \*

"However, in many cases, a stated ground upon which relief is denied is that the mistake is one of law. But often in such cases there are no attendant special circumstances · justifying equitable relief. Undoubtedly, the difficulty of producing

objective evidence of conduct is frequently greater in cases of mistake of law than in cases of mistake of fact, but this should not militate against granting relief in a proper case whenever satisfactory evidence can be produced. * . * *" 3 Pomeroy's Equity Jurisprudence, 5th Ed., Sec. 851b.

Nor do we agree that under the statute or under general rules of law a state acting in its proprietary capacity as a land owner cannot be estopped by the acts of its officers in a proper case. What is a "proper case" has never been defined. Each case must be controlled by its own facts. Whether the facts here are sufficient to estop the state we do not find it necessary to decide. But there are strong equities favoring the plaintiff who lived in a distant state, and who was advised by the commissioner that his leases could not be legally cancelled for ninety days after default. Strand v. State, 16 Wash.2d 107, 132 P.2d 1011; 31 C.J.S., Estoppel, § 140.

In any event it was in the power of the commissioner to cancel his notice and that was the effect of his letter.

In regard to estoppel against the public it has been said:

" * * * Estoppels against the public are perhaps not as readily granted as against private individuals, but it has been decided frequently that the public may estop itself by acts done in its proprietary capacity. While mere delay, either by lim- itations or laches, does not of itself con- stitute a bar to suits of the United States, yet when a sovereignty submits itself to the jurisdiction of a court of equity, and prays its aid, its claims and rights are adjudic- able by every other principle and rule of equity applicable to the claims and rights of private parties under similar circum- stances." The Falcon, D.C., 19 F.2d 1009, 1014.

See annotation 1 A.L.R.2d 346, Sec. 6 and cases cited.

The trial court found as a fact that the plaintiff mailed the rentals from Prov- idence, Rhode Island, by air mail, on the 13th day of May, 1948, addressed to the defendant Miles, Commissioner, at Santa Fe, New Mexico. The evidence shows that in due course of mail it would have ar- rived in Santa Fe on the 14th, or at latest on the morning of the 15th of May. The latter date being the eighty-ninth day. But the land office was closed for the en- tire day of the 15th, which was Saturday and the letter was in the mail the follow- ing Monday the 17th. In the absence of any other testimony on the question, we are of the opinion that the trial court should have found, as requested by the plaintiff, that the letter containing the remittance was received in Santa Fe at the latest on the 15th day of May, 1948. Kays v. Little, 103 Kan. 461, 175 P. 149, 1 A.L.R. 675, and annotation at page 677 et seq. And if it was placed in the post office box of the de-

fendant commissioner on either the 14th or 15th of May it was delivered in time, and under the facts of this case no other conclusion could be reached. Fernandez Co. v. Montoya, 42 N.M. 524, 82 P.2d 289, 118 A.L.R. 573. But in the absence of a new notice from the defendant the rental was not necessarily payable at the latest on the ninetieth day. It might run to a hundred and twenty days. We are of the opinion that the rentals were paid before any legal cancellation of the leases was made.

The judgment of the district court is reversed and the cause remanded with instructions to enter a decree for the plaintiff as prayed for. It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.