232 P.2d 986

## SCHMITZ v. NEW MEXICO STATE TAX COMMISSION et al.

No. 5366.

Supreme Court of New Mexico.

June 14, 1951.

Rueckhaus & Watkins, Albuquerque, for appellant.

C. C. McCulloh, Santa Fe, for State Tax Comm.

Sam Dazzo, Albuquerque, for intervenors.

COORS, Justice.

The Appellant-Plaintiff, Birdie Schmitz, Administratrix of the Estate of Nels A. Bengston, deceased, filed a petition for mandamus against New Mexico State Tax Commission seeking an order from the District Court requiring defendant to execute and deliver to her a deed conveying 640 acres of land in Rio Arriba County, New Mexico. She alleged she is the Administratrix of the Estate of Nels A. Bengston, deceased; that she holds letters of administration from the Probate Court of Rio Arriba County, New Mexico, issued on March 6, 1950; that the State of New Mexico holds tax deed No. 2486 C to said land owned in his lifetime by said Bengston, deceased, and that pursuant to her right under Section 76–740, New Mexico Statutes Annotated, 1941 Compilation, she filed with the Tax Commission on March 6, 1950 her application to repurchase said land accompanied by check for $683.06, being the amount of taxes, costs, etc., and also a certified copy of her letters of administration; that defendant failed and refused to deliver the deed to plaintiff.

The District Court issued an alternative writ of mandamus ordering defendant commission to execute and deliver the deed or show cause why it had not done so.

A motion was filed by Caswell Silver and C. C. Davis asking leave to intervene on the ground they claimed some right, title and interest in the real estate involved. The trial court granted them leave to intervene and such intervenors filed their answer and also a complaint in intervention. The defendant commission filed an answer. The case was heard by the trial court on the pleadings, written exhibits and statements of counsel of the parties made to the court as to the facts in the case which counsel agreed should be considered as evidence by the court without formal introduction of sworn oral testimony. Defendant commission and intervenors joined forces in opposing plaintiff and set up the same defenses and filed joint requested findings of fact and conclusions of law.

The defendants and intervenors contended that the statutes gave plaintiff no right to repurchase from the Tax Commission the property formerly belonging to Bengston, deceased, for the reason that under our law upon the death of a person intestate, real estate passed directly to his heirs and not to the administrator and that the administrator has no right, title or interest in the land nor the right to repurchase real estate sold to the State for taxes unless ordered by the District Court to take it and sell it for the benefit of creditors or to possess it for the benefit of ex-

isting heirs who were not present and able to take possession and care for it themselves, and further contended that Bengston had died in May, 1932, intestate and without heirs and therefore the title to the property vested in the State of New Mexico by escheat and that the State of New Mexico was therefore the owner of the statutory right to repurchase the land as provided in Section 76-740, New Mexico Statutes Annotated 1941.

The material facts in the case are undisputed. Plaintiff in her individual capacity on February 27, 1950 filed with the State Tax Commission an offer to purchase the 640 acres in question for the sum of $2,800.00. On March 6, 1950 plaintiff as administratrix of Nels A. Bengston filed with the State Tax Commission an application to repurchase the same land for $682.67, being the amount of delinquent taxes, interest and costs claimed against the property. On March 25, 1950 the intervenors filed their offer to purchase the land for the sum of $6,438.40. None of these offers had been accepted by defendant up to the date of trial and judgment. Nels A. Bengston had lived in Pueblo, Colorado, and some time before 1920 he had filed and began living upon a government homestead of 640 acres (the land here involved) in Rio Arriba County, New Mexico. He was granted a patent to the land in 1923 and continued to live upon it until 1927 when he became insane and was taken back to Pueblo, Colorado, and placed in the Colorado State Insane Asylum where he was confined until he died in May, 1932. Bengston, owner of the land, died intestate and without any known heirs. Attorneys for both plaintiff and intervenors made diligent search and inquiry to find or contact any heirs or to ascertain if there were any heirs surviving Bengston, all without avail. Their inquiry was made of people living in the vicinity of his homestead and of people in Colorado who knew him or of him during his lifetime and of the Insane Asylum where he spent the last years of his life. The attorneys stated to the trial court, which was considered evidence, that they were unable to find any heirs or any trace of heirs. No creditors had filed claims against the estate and if there had ever been any creditors, their claims had long been barred, Bengston having been dead for eighteen years when the present cause was filed. The plaintiff herein filed a petition in the probate court of Rio Arriba County and in such verified petition, filed eighteen years after Bengston's death, stated, he "died leaving no will, no surviving conjugal partner, nor any known heirs". On the 6th day of December, 1935, three and one-half years after Bengston's death, the county treasurer of Rio Arriba County sold the land to the State for taxes for the years 1931, 1932, 1933 and 1934, and thereafter, in pursuance to said tax sale, issued a tax sale certificate to the State,

and on February 3rd, 1949 executed to the State and delivered to the defendant State Tax Commission a tax deed purporting to convey title to the said land to the State of New Mexico. Hence the controversy between the plaintiff and the intervenors as to the right to purchase title from the defendant.

The Court, after making many findings of fact and conclusions of law, entered judgment discharging the alternative writ of mandamus theretofore issued.

█ A number of findings and conclusions of the trial court were unnecessary and immaterial, but conclusion of law No. 2 was clearly erroneous for the reasons hereinafter discussed, but was not prejudicial because the final judgment rendered was correct notwithstanding the court's misconception of the law upon which the judgment should have been based. This erroneous conclusion reads as follows: "The tax lien of taxes for 1931–1932 is sufficient to support title in the State under said tax deed. The title, vested in the State by escheat, would only vest in the State the right to repurchase, which the owner would have, had he lived."

While plaintiff made ten assignments of error, and reduced those to five points for discussion, there are only three important controlling questions in the case and two of these are closely related.

The first question is, Did the land belonging to Bengston at the time of his death remain uninherited? That is, Did he die intestate and without heirs? The second closely related question is, If he had no heirs did the title to the property vest in the State of New Mexico immediately upon his death, or would it not vest until the State brought and concluded a formal judicial proceeding to have a competent court find he died without heirs and render a judgment declaring and ordering the title passed by escheat.

There is very little to be found upon the subject of escheat in the New Mexico State Constitution or the statutes. The only mention of escheat in the Constitution appears in Article XII, Section 4, which provides, among other things, that the net proceeds of property that may come to the State by escheat shall be a part of the current school fund of the State.

Chapter 31 of New Mexico Statutes Annotated 1941 deals with descent and distribution and sets forth and defines heirs, that is, those persons legally capable of inheriting, etc. Section 31-121 provides: "If there be property remaining uninherited, it shall be escheat to the state."

That is all. There is no provision requiring the State to do anything affirmative, judicial, or otherwise.

The only other statutes in any way relating to property that might pass to the State by escheat are Sections 50–716 and 50–718 of the New Mexico Statutes An-

notated 1941 relating only to bank deposits, and Sections 33–1501 to 33–1506, New Mexico Statutes Annotated 1941, referring to abandoned and neglected personal property only. These statutes do not touch the subject before us, viz., the passing of title to real estate by escheat.

■ Plaintiff contends the trial court erred in finding: "Nels A. Bengston died intestate in May 1932 without any known heirs or heirs who can reasonably be ascertained." Plaintiff argues that one cannot be considered to have died without heirs until a competent court has formally adjudicated that fact after proper proceedings have been instituted for that very purpose. We do not agree with plaintiff's contention. The court had before it the sworn petition of plaintiff herein which she filed in probate court seeking to be appointed administratrix in which she stated: "Nels A. Bengston, deceased, died leaving no will, no surviving conjugal partner, nor any known heirs."

The attorneys for the contestant plaintiff and intervenors each related to the court their efforts and actions taken in trying to find any heirs of the deceased, which was agreed should be considered by the court as evidence, and reported to the court they were each unable to ascertain or locate or learn of any heirs, after diligent search. The court also took into consideration the fact that eighteen years had passed since Bengston died intestate and that during that long period of time no heir had appeared or been found. The finding of the court was correct. There was substantial and ample evidence before the court to sustain it in this case. The finding was equivalent to and meant that the deceased died intestate and without heirs, or in the words of our statute, that there was "property remaining uninherited". Robinson v. State, Tex.Civ.App., 117 S.W.2d 809.

The statute says: "If there be property remaining uninherited, it shall be escheat to the state."

The question is when and how does it pass by escheat. The plaintiff says even though there may be no heirs or known heirs, still the title does not pass for the reason the State has taken no affirmative action which is required to make the statute operative and pass title by escheat. Plaintiff says the State must start a proper judicial proceeding and secure a judgment of court declaring an escheat before the State takes any right or title by escheat.

■ While we find some authority sustaining plaintiff's contention, we find that where there are no statutes requiring escheat proceedings, judicial or otherwise, the great weight of modern authority holds that passing of title by escheat to the State does not depend upon or wait for any affirmative action by the State such as entry upon the land or a judicial proceeding and judgment, but that the title

passes by escheat to the State automatically and immediately upon the death of the person, without heirs. In re Melrose Ave., 234 N.Y. 48, 136 N.E. 235, 23 A.L.R. 1233 and annotations at page 1237; 19 Am.Jur. 395, Section 29.

The title to the land in question passed by escheat to the State of New Mexico automatically and immediately upon the death of Nels A. Bengston in May, 1932.

Passing to the third question in the case —What was the effect, first, of the tax sale in 1935 for delinquent taxes levied for the years 1931 to 1934, both inclusive; second, of the issuance thereafter of the tax sale certificate to the State, and, third, of the issuance and delivery of the tax deed thereafter to the State? Were these proceedings taken by the tax officials and these instruments executed by them to the State valid or void?

The lower court, at the request of the defendant and intervenors, announced its erroneous conclusion of law hereinbefore set forth with reference to the tax title and the right to repurchase being in the State. The title to the property (title in fee simple) passed to the State by escheat in May, 1932 and upon that passing and from that time the property was not subject to taxation because it was owned by the State. At the instant title passed by escheat to the State any taxes then due or delinquent were forthwith abated and ex-tinguished. The tax officials were without power or authority to proceed in any way to levy, collect or enforce any tax or any tax lien against the property whether levied for years prior or subsequent to the date of the escheat. The tax sale made by the county treasurer in 1935 was void. The tax sale certificate thereafter made to the State as well as the tax deed, also thereafter issued and delivered to the State Tax Commission were absolutely void. The State took nothing by virtue of the tax sale certificate or the tax deed.

Of course the State had no statutory right to redeem or repurchase from itself even if the tax deed had passed any right or title. The lesser right, a mere right to repurchase, would have merged in the fee simple title which the State had already acquired by escheat. But the tax deed passed nothing, it was a nullity, absolutely void.

Article VIII, Section 3 of the Constitution of New Mexico provides: "The property of the United States, the state and all counties * * * shall be exempt from taxation." This provision of constitutional law is based upon sound public policy. Property is taxed for the purpose of raising funds for the State to carry on its governmental affairs. Could a State raise revenue by levying and collecting a tax against itself on property and paying the tax to itself? Such procedure would be useless and obviously ridiculous. If prop-

erty owned by the State would be sold for taxes levied prior to the acquisition by the State, such would result in the same ridiculous situation. The State would be selling its own property to pay a debt to itself. The authorities are almost unanimous in holding that where a State takes title to property it is forthwith freed from any further liability for taxes previously levied and there is no longer any power to collect or enforce the tax. It is gone. It has ceased to exist. This question is most ably and thoroughly discussed by Justice Bratton in State v. Locke, 29 N.M. 148, 219 P. 790, 30 A.L.R. 407. See also Annotations, 2 A.L.R. 1535.

■■ The State of New Mexico having acquired no title nor any right or interest whatsoever in the land by virtue of any tax sale or tax deed, the defendant has no power or authority whatsoever to allow plaintiff to repurchase the land, nor to allow intervenors to purchase it. The State Tax Commission's power and authority to sell and convey for the State is limited to such property as is acquired by the State under tax deed. The property involved here was not in any sense acquired by the State under tax deed, but by escheat. The defendant State Tax Commission has no power or authority to sell or convey the property to either the plaintiff or the intervenors or anyone else, and any deed of conveyance made and delivered by the defendant State Tax Com-

mission to plaintiff or intervenors would be absolutely null and void.

The judgment will be affirmed and it is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.