427 P.2d 225

FIRST NATIONAL BANK IN ALBUQUER-
QUE, Trustee for Pajarito Enterprise, a
Joint Adventure, Plaintiff-Appellee and
Cross-Appellant,

v.

STATE of New Mexico, Defendant-
Appellant,

Mayoma Keely, Patricia Keely Kerr, Jack
Keely and Gordena E. Reifschneider, De-
fendants and Cross-Appellees.

No. 7994.

Supreme Court of New Mexico.

May 1, 1967.

Harry O. Morris, Albuquerque, for appellee and cross-appellant.

Boston E. Witt, Atty. Gen., James V. Noble, Asst. Atty. Gen., Santa Fe, for appellant.

James A. Borland, Albuquerque, for cross-appellee Reifschneider.

Cornell & Clayburgh, Albuquerque, for cross-appellees Keely and Kerr.

## OPINION

MOISE, Justice.

Plaintiff-appellee, hereinafter referred to as "Bank," sought by this action to quiet title as trustee to a number of small tracts of land in Bernalillo County. Title was acquired by the Bank's trustors through a conveyance from one Alberto Le Pore to whom, in turn, the property had been conveyed by the appellant, State of New Mexico, hereinafter referred to as "State." Although the original suit included considerably more acreage, only 82½ acres remain at issue. The State appeals from the court's decree quieting title in the Bank to the

particular 82½ acres, and the Bank has cross-appealed from the action of the court in decreeing Gordena Reifschneider, hereinafter referred to as "Reifschneider," to be the owner of a tract of ten acres, and Mayoma Keely, Patricia Keely Kerr and Jack Keely, hereinafter referred to as "the Keelys," to be owners of another tract of twenty acres.

The State asserts that, "The question involved is whether the State ever effectively parted with title to appellee's (Bank's) predecessor in title, Alberto Le Pore, and whether the fact that the property was purchased by bona fide purchasers for value without notice vests appellee (Bank) with title in any case." In support of their position they argue that the evidence is not substantial in support of the court's findings and conclusions that (1) title had vested in the Bank, or (2) that consideration had been paid by Le Pore to the State.

The State argues that part of the lands were purportedly conveyed to Le Pore by two quitclaim deeds which on their face show that they were reconveyances to the owner as authorized by ch. 190, N.M.S.L. 1939. The pertinent language in the deeds reads:

"WHEREAS, by virtue of Chapter 190, Session Laws of 1939, said party of the first part is authorized to convey back to the owner the hereinafter described real estate in consideration of the payment of all taxes due upon said real estate for the year or years included in said deed to the State, said deed to the State having been erroneously issued. Payment of taxes for said year or years having been made to the county treasurer of said county, receipt of which is hereby acknowledged."

The only provisions in Chapter 190, N. M.S.L.1939, which could possibly have any application are sections 4 and 5, which read:

"Section 4. In the event a tax deed is or has been issued to the State of New Mexico for unpaid taxes, and said deed is issued erroneously by the county treasurer because of a duplicate assessment or otherwise, and all taxes charged under the valid assessment are fully paid, the State Tax Commission is hereby authorized to execute and deliver back to the owner a deed to the property in such manner erroneously deeded to the State. The payment of taxes on the valid assessment shall constitute adequate and sufficient consideration for the execution of the deed back to the owner."

"Section 5. When more than one tract, parcel, lot or part thereof is included in a tax sale certificate owned by the State of New Mexico and not assigned to a third person, and the same is subject to redemption, the person entitled to redeem may redeem any tract, parcel, lot or part thereof included in such cer-

tificate without redeeming all of such property contained therein, provided the County Treasurer can with reasonable certainty segregate the part or tract to be redeemed and can ascertain the amount due thereon. The balance of the property remaining in such certificate and not redeemed may be assigned or deeded in the same manner as though it were all that was originally sold and with the same effect."

Section 4 above remains unchanged in the law as § 72–8–23, N.M.S.A.1953, and Section 5, as amended, appears as § 72–8–11, N.M.S.A.1953.

It is the State's position that the deeds show on their face that they were issued pursuant to law granting certain preferential rights to prior owners and, there being no showing that Le Pore had previously held any interest in the property, he was not entitled to the benefits of the statute. In addition, it argues that there is no substantial evidence to support the court's finding that Le Pore paid any consideration for the lands.

In the view we take of the case, these arguments can avail the State nothing. Whether or not Le Pore was a prior owner of land in a tax sale certificate redeeming therefrom, or was a prior owner obtaining a reconveyance after an erroneous sale under a double assessment or otherwise, or whether or not there was proof of the payment of consideration, the State is in no position to complain. Conceding, for the sake of argument, that as between the State and Le Pore, these claims, if sustained, would be sufficient grounds for setting the deeds aside, an entirely different situation presents itself when the title has passed to bona fide purchasers for value and without notice of the claimed defects. See opinion filed this date in State ex rel. State Tax Commission v. Garcia, 77 N.M. 703, 427 P.2d 230, where this problem is discussed in a companion case.

We first note §§ 72–8–28 and 72–8–43, N.M.S.A.1953, which in material part read as follows:

"72–8–28. The state tax commission shall have full power and authority to administer any property acquired by the state under tax deed; to institute, defend, or intervene in, in the name of the state of New Mexico, any suit or action involving the title derived under any such tax deed or conveyed by said commission; to sell, either for cash or by contract, any such property. Any contract or conveyance affecting the title of any such property shall be valid for the purpose therein expressed when executed and signed by the chief tax commissioner and attested by the secretary of the state tax commission or the assistant secretary. * * *"

"72–8–43. A deed of conveyance from the state, duly executed by the state tax

commission, shall be prima-facie evidence that all the provisions of this act relating to duties of the state tax commission in the administration of property acquired by tax deed have in fact been complied with and performed." ·

▮ In connection with these two sections we would observe that their obvious purpose is to give a measure of certainty and security to tax titles. § 72–8–28, supra, gives the state tax commission authority to sell land acquired under tax deed and expressly makes deeds issued by it "valid for the purpose therein expressed," when properly executed by the persons authorizd in the statute. § 72–8–43, supra, then purports to make the deeds prima facie evidence that the state tax commission has complied with the law in all respects in handling the property. In the light of these provisions it is quite apparent that the deeds here being attacked are signed by the proper officials and are prima facie valid unless some departure from statutory mandates, which made the conveyance a nullity and void, is established. However, the burden in the respect was on the State in order to overcome the prima facie effect granted the deeds by § 72–8–43, supra. 33 A.L.R. 9, 24; 88 A.L.R. 264, 267; compare Edmondson v. Aetna Loan & Mortgage Co., 37 N.M. 478, 24 P.2d 730.

The same is true as regards the other objections made to the deeds. Neither can the State find any support in §§ 72–8–31, 72–8–32, or 72–8–35.4, N.M.S.A.1953, all cited by it. Clearly, § 72–8–31, supra, sets forth rights granted to "the person, or any lienholder, whose title to or interest in property has been extinguished" to a preferential redemption or repurchase right. Similarly, § 72–8–32, supra, establishes certain rights in "any person entitled to repurchase."

The State also calls our attention to § 72–8–35.4, N.M.S.A.1953. Even as to that portion of the land covered by tax sales which occurred after the effective date of ch. 353, N.M.S.L.1959, the provisions of § 72–8–43, discussed above, would place the burden of proof on the State that there had been some defect in the procedure which would make void the title acquired by the purchaser.

▮ We are fully aware that we have said that a tax deed issued before the period of redemption provided by law has expired, is void. Crawford v. Dillard, 26 N.M. 291, 191 P. 513. Also, in Trujillo v. Montano, 64 N.M. 259, 327 P.2d 326, we held that no title is acquired by a person having no prior right, title or interest in property through a tax deed issued pursuant to § 72–8–31, supra. We do not understand how, in the light of §§ 72–8–28 and 72–8–43, discussed above, and of § 72–8–20, N.M.S.A. 1953, limiting the grounds on which tax titles may be attacked, and of § 72–8–21, limiting the time therefor, it can be as-

serted that all tax deeds not issued in strict accord with statute are void and of no effect. Rather, the rule of the cases noted would appear to be applicable in fact situations such as were being there considered. However, we see nothing in these decisions or in the statutes noted which would in any sense give support to the State's position herein.

In this proceeding, the State seeks cancellation of the deed issued by it, without proof of any wrongdoing or fraud on the part of its officers or agents or of the purchasers, solely because of claimed departures from statutory procedures for disposing of property acquired by the State by tax deed.

Under the circumstances, we are constrained to hold that the State is in no better position to avoid its deeds or to claim deprivation of rights guaranteed by statute to the prior owner than would be some other stranger to the right. We notice our decision in Scudder v. Hart, 45 N.M. 76, 110 P.2d 536, wherein we considered the rights of an "owner" to attack a tax title because of constructive or actual fraud of the taxing authorities, and the court discussed who came within the term "owner." From what is there said it is quite apparent that the state is not an "owner" in the sense that term is used in § 72–8–23, quoted above. Neither is it a "person entitled to redeem" as used in § 72–8–11, supra. As held in Scudder v. Hart, supra,

the term "owner," as used in the statute, includes a mortgagee, but we see nothing to support the idea that it includes the State by virtue of its being the assignee of a tax sale certificate or the grantee in a tax deed. In other words, the rights preserved in the noted sections are rights of "owners" as that term is interpreted, and the State cannot bring itself within the protection of the sections. We conclude that, unless the conveyances were void and a nullity, the State had no standing to assert rights given by statute to "owners" or "persons entitled to redeem."

In Kershner v. Sganzini, 45 N.M. 195, 204, 113 P.2d 576, 134 A.L.R. 1290, grantees in a tax deed executed by the county treasurer without authority of law were held to be strangers to the title and not entitled to assert rights against the former owner. It was there held that the State was not a party and made no claim with reference thereto. Here, where the state is a party and is claiming the conveyances made by the State Tax Commission to be void, we hold it has no right cognizable in law or equity to do so under the facts.

Our conclusion is in no sense based on any theory of estoppel. Appellee makes no argument based on estoppel of the State to deny its deed. Accordingly, we do not consider whether such a plea would have support in law. However, see annotation in 23 A.L.R.2d 1419, 1427. See, also, Durell v. Miles, 53 N.M. 264, 206 P.2d 547. Simply

stated, we reach our decision on the basis that the State has not advanced or proved any theory which would support interference by a court of equity in rights based upon a tax deed issued by it without any wrongdoing on the part of the grantee. True, certain departures from statutory requirements are pointed out but, as noted above, we do not find in these statutes any legislative purpose to deny all effect and make void, all deeds issued without strictly complying therewith. The situation here differs materially from those discussed in State ex rel. Attorney General v. Ward, 272 Ala. 646, 133 So.2d 383, and in United States v. City and County of San Francisco (N.D. Cal.S.D.1953) 112 F.Supp. 451.

We have discussed the situation present in connection with the two redemption deeds. The third deed did not purport to be a redemption. However, the reasons for the decision reached as to the first two deeds applies equally to the third, and we perceive of no need to discuss the additional arguments concerning the third deed, advanced by appellant in its brief.

The cross-appeal by appellee with reference to the twenty acres decreed to the Keelys purports to raise the question of the effect of two conveyances from the State. The cross-appellants rely on a 1962 deed from the State based on 1941 and 1944 taxes and deeds to the State in 1945 and 1948 on account thereof. Appellees, Keelys, rely on a deed from the State dated in 1949, based

upon 1942 taxes, and a tax deed to the State dated in 1946.

We do not agree with cross-appellants' arguments. This is not a case of an attempted sale of lands on which taxes had been illegally assessed because the property was owned by the State as was true in Schmitz v. New Mexico State Tax Commission, 55 N.M. 320, 232 P.2d 986. In 1942 the property here had not been acquired by the State and the taxes for that year had been properly assessed. The real question, in our view, is what title could cross-appellant acquire by its tax deed in 1962 when the property had been conveyed away by the State in 1949, and no new title had been acquired by the State on account of any unpaid taxes accruing thereafter? The answer would appear obvious. After 1949 when the State sold the land and deeded it to the Keelys, it had no property interest which it could later sell and convey. Deeds from the State do not purport to convey interests acquired by the State under any particular tax deed. They convey the State's interest in the property. This is true even though reference to certain tax sale certificates or deeds may be contained in the conveyance by the State. Accordingly, the 1962 deed was a nullity and conveyed nothing. Preston v. Bennett, 67 W.Va. 392, 68 S.E. 45; Doolittle v. J. L. Gates Land Co., 131 Wis. 24, 110 N.W. 890; Charter Oak Land &.Lumber Co. v. Bippus, 200 Mo.

688, 98 S.W. 546. The trial court ruled correctly as to the Keely property.

The situation concerning the Reifschneider property is different. Cross-appellant claims under a tax deed from the State in 1962 on account of delinquent taxes for 1941. Cross-appellee would avoid the sale by asserting that she entered into a contract to purchase the land in 1934, and acquired her deed in 1944 when she "made inquiry and was assured that all taxes had been paid" by her grantor up to the time of the conveyance to her. The court so found. However, the court's findings are based on exhibits attached to interrogatories and on a stipulation of the parties. There is nothing contained therein which remotely suggests the presence of any false assurances or representations by a public official which might be considered as fraud, actual or constructive, whereby a deed based upon unpaid taxes could be avoided under the rule of Fernandez Co. v. Montoya, 42 N.M. 524, 82 P.2d 289, 118 A.L.R. 573; Kershner v. Sganzini, supra, and Scudder v. Hart, supra. Neither is there proof of any of the matters provided in § 72–8–20, N.M.S.A.1953, as a basis for avoiding the effects of a tax deed.

Cross-appellee does not answer cross-appellant's argument but would have us affirm through application of the doctrine of lex non curat de minimis because of the fact the property has a value of no more than $50.00. However, the issues having been presented and tried, and it being quite apparent that the court erred, we have considered the merits of the controversy. The court erred in quieting title to this tract in Reifschneider.

The cause is affirmed in all respects except as to the Reifschneider tract and, as to that, it is reversed with instructions to enter a decree quieting title in the Bank.

It is so ordered.

COMPTON and CARMODY, JJ., and HENSLEY, Jr., C. J., Court of Appeals, concur.

NOBLE, Justice (concurring specially in the result).

I agree with the result reached by the majority. The record makes it clear that while the deed issued by the State Tax Commission to Le Pore recites that it is a reconveyance to a former owner, the record in this case discloses no evidence in the Tax Commission's files indicating an application to repurchase by him, nor any indication of fraud by the Tax Commission's grantee. The mere fact that a repurchase form of deed was used, without more, is insufficient, in my view, to render the Tax Commission's deed invalid.

For all of the reasons given in my dissent in State ex rel. State Tax Commission v. Garcia, 77 N.M. 703, 427 P.2d 230, filed this day, I am unable to agree that a transfer of the Le Pore title to a bona fide pur-

chaser added validity to the Le Pore title. If, in fact, his title had been invalid, it would have gained no validity by transfer to another.

Being unable to agree with a large·part of the reasoning by which the majority has reached its result, I, therefore, only agree with the result.