642 P.2d 172

**Eliu E. ROMERO, Plaintiff-Appellee,**

v.

**The STATE of New Mexico, Alex J. Armijo, Commissioner of Public Lands, Defendants-Appellants.**

**No. 13435.**

Supreme Court of New Mexico.

Feb. 24, 1982.

William O. Jordan, Daniel A. Sanchez, Santa Fe, for defendants-appellants.

Jones, Gallegos, Snead & Wertheim, J. E. Gallegos, Peter V. Culbert, Santa Fe, for plaintiff-appellee.

OPINION

RIORDAN, Justice.

This is an appeal from the district court's grant of summary judgment, quieting title in plaintiff Eliu Romero (Romero) against the defendants State of New Mexico and Alex Armijo, Public Lands (Commissioner). We reverse.

Jack Elder (Elder) entered into a purchase contract with the State Land Office on May 14, 1963, for the purchase of the property in dispute. During the time that the purchase contract was in effect, the property was subject to taxation pursuant to § 72–1–3, N.M.S.A.1953 (Repl.Vol.1961) (repealed 1974 N.M. Laws, ch. 92, § 34). Elder subsequently defaulted on the contract, and it was cancelled by the State Land Office as of December 1, 1967. The Commissioner notified the Taos county tax assessor of the default and that the property was no longer subject to taxation. N.M. Const., Art. VIII, § 3. The tax assessor failed to remove the property from the tax rolls and continued to assess taxes against the property under Elder's name.

In July 1974, Norheim brought an action against Elder, the State of New Mexico and other defendants, requesting a foreclosure to satisfy a judgment held by Norheim. *Norheim v. Elder, et al.*, No. 9741 (Eighth Judicial District, Taos County, June 3, 1976). The complaint alleged that Elder was "the owner of, or claimed an interest in" certain real estate, including the property at issue here. The State was a named defendant because it claimed an interest in the same property pursuant to Tax Deed 1965–1346. Judgment was entered in *Norheim* against the defendants, and the property was sold pursuant to a Special Master's sale. The State was paid $187.64 for the taxes allegedly owed on the property now in dispute. Romero subsequently purchased the property from the purchaser at the foreclosure sale. Romero brought a quiet title suit naming the State as a party defendant. The complaint alleged that the State "might claim an interest through the cancellation of Contract No. 5227 for the purchase of public lands issued by the New

Mexico State Land Office; that it might further claim an interest through * * * Tax Deed No. 1965–1346." Both parties moved for summary judgment. After considering both motions, the district court granted Romero's motion.

The issues on appeal are:

(I) Whether legal title to the property has always been retained by the State.

(II) Whether the Commissioner is collaterally estopped from asserting title to the property.

I *Legal Title*

█ The Commissioner argues that the district court erred in granting summary judgment in favor of Romero. He alleges that legal title to the property has always been in the State, and foreclosure sale of state lands, without the approval of the Commissioner, violates § 10 of the Enabling Act (Pamp. 3, N.M.S.A.1978), adopted by N.M.Const., Art. XXI, § 9.

Title to the land in dispute was issued by a United States patent and was held in trust by the Commissioner, as part of the state public lands. The Commissioner sold this property pursuant to § 10 of the Enabling Act, which provides for the sale of public lands to the highest bidder. Under the Act, legal title to the land is retained by the State until the full purchase price is paid. Since Elder defaulted on the contract, his equitable title immediately reverted to the State by operation of law. When there is a default, the State's remedy is to retain whatever money the purchaser has paid as liquidated damages since the State cannot enforce specific performance of the contract; the land is security for the payment of the purchase price and the inducement for the purchaser to pay is the fact that the State retains the title to the land until the final payment is made. *Zinn v. Hampson*, 61 N.M. 407, 301 P.2d 518 (1956). Thus, the State never conveyed title to the property and Elder could not have acquired title to the property.

Inasmuch as the State retained title, the State Property Appraisal Department was without authority to assess taxes against

**572**

the land after the cancellation of the contract of sale. State-owned land is exempt from taxation. N.M.Const., Art. VIII, § 3. The tax deed held by the Property Appraisal Department was void; therefore, any deed issuing from the foreclosure sale conveyed nothing. *See Schmitz v. New Mexico State Tax Commission*, 55 N.M. 320, 232 P.2d 986 (1951).

> The title to the property (title in fee simple) passed to the State by escheat * * * and upon that passing and from that time the property was not subject to taxation because it was owned by the State. At the instant title passed by escheat * * * any taxes then due or delinquent were * * * extinguished. The tax officials were without power or authority * * * to levy, collect or enforce any tax or any tax lien against the property * * * * The tax sale made by the county treasurer * * was void. * * * The State took nothing by virtue of the tax sale certificate or the tax deed.
>
>   *   *   *   *   *   *
>
> The State of New Mexico having acquired no title nor any right or interest whatsoever in the land by virtue of any tax sale or tax deed, the [Tax Commission] has no power or authority whatsoever to allow plaintiff to repurchase the land * * * * The State Tax Commission's power and authority to sell and convey for the State is limited to such property as is acquired by the State under tax deed * * * * [A]nd any deed of conveyance made and delivered by the defendant State Tax Commission * * * would be absolutely null and void.

*Id.* at 325–26, 232 P.2d at 990–91.

This is precisely the situation in the *Norheim* case. The purchaser at the foreclosure sale (Romero's predecessor in title) may have believed that he was purchasing Elder's right to redeem the property by paying the delinquent taxes. Elder, however, had no right to redeem since the taxes were assessed without authority. Elder lost all right and interest in the property when he defaulted on the purchase contract. His

successor in interest (the purchaser at foreclosure) could acquire no greater interest in the property than Elder had.[1] Consequently, the purchaser acquired nothing through the Special Master's deed. Legal title to the property was retained at all times by the State and equitable title automatically reverted upon Elder's default.

**II  *Collateral Estoppel***

Romero argues that the State is estopped from collaterally attacking the *Norheim* judgment because the State was a party in the case and the issue of ownership was necessarily decided by the judgment.

■ The doctrine of *collateral estoppel* applies to relitigation of identical issues or facts which were actually and necessarily decided in a prior suit between the same parties or their privies. *Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978). Collateral estoppel differs from *res judicata* in that the issue sought to be estopped must have been actually litigated, whereas *res judicata* bars relitigation of any issue which might have been litigated in the first suit.

> 'The general rule of res judicata applies to repetitious suits involving the same cause of action * * * * [T]he parties to the [first] suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim * * * but to any other admissible matter which might have been offered for that purpose * * *'
>
> 'But where the second action between the same parties is upon a different cause * * * the principle of res judicata is applied much more narrowly * * * * [T]he judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' (Authorities.) * * * *[T]he parties are free to litigate points which were not at issue in the first pro-

1. This issue is more fully discussed *infra* at IIA.

*ceeding, even though such points might have been tendered and decided at that time.* But matters which were actually litigated and determined in the first proceeding cannot later be relitigated * * * *' [Emphasis added.]

*Town of Atrisco v. Monohan,* 56 N.M. 70, 78–79, 240 P.2d 216, 221 (1952) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)).

Thus, the question becomes whether title to the property in dispute was (A) actually litigated by the parties in *Norheim and* (B) whether title was necessary to the decision in the foreclosure action.

*A.  Actually Litigated*

■ The burden of showing that title was actually litigated is upon Romero, as he is the one asserting collateral estoppel. Unless the foreclosure judgment indicates clearly that title was actually litigated, the State will not be estopped from asserting a paramount title over Romero. In passing upon this question, we are obliged to determine the intention and meaning of the *Norheim* judgment and resort to the pleadings and other documents in the record where it is necessary to ascertain the nature of the rights asserted and the significance of the judgment entered. *Mundy & Mundy, Inc. v. Adams,* 93 N.M. 534, 602 P.2d 1021 (1979).

Upon the record before us, the complaint filed in *Norheim* states that the plaintiff (Norheim) has a judgment against Elder which constitutes a "lien upon the land and real estate, *or any interest therein "* of Elder. (Emphasis added.) The complaint also alleges that the State has an interest in the same property by virtue of certain tax deeds which is subordinate to plaintiffs' lien. The State answered, alleging that it had an interest in the property by virtue of the tax deeds, which was paramount to plaintiffs' lien. Elder filed an answer in which he denied that he had an interest in the subject property.

The judgment entered in *Norheim* established the priority of the liens claimed and concluded that the State was entitled to $187.64 for delinquent taxes on the property in dispute, which interest was paramount

to plaintiffs' claim. The court also concluded that "Elder has *or had* an interest in the real estate [including the property at issue here] * * * and said interest is subject to foreclosure and sale." (Emphasis added.) The court also entered a default judgment against Elder, who failed to appear at the trial on the foreclosure suit.

■ It seems clear from the record that the only interest adjudicated was whatever interest Elder had in the subject property. While we agree that during the time Elder's purchase contract with the State was in effect, Elder had equitable title to which a lien may attach, *Mutual Building & Loan Ass'n of Las Cruces v. Collins,* 85 N.M. 706, 516 P.2d 677 (1973), *overruled on other grounds, Marks v. City of Tucumcari,* 93 N.M. 4, 595 P.2d 1199 (1979), once Elder defaulted, his interest terminated and any lien upon his interest also terminated. *See Petrakis v. Krasnow,* 54 N.M. 39, 213 P.2d 220 (1949). This is in accord with the rule that a judgment lien can attach only to whatever interest the debtor has in the property. If he has no interest, then no lien can attach. 2 A.C. Freeman, A Treatise of the Law of Judgments § 950 (5th ed. 1925).

■ The purchaser at a foreclosure sale can acquire only such interest as the judgment debtor had in the property sold. *Blue v. Superior Court,* 147 Cal.App.2d 278, 305 P.2d 209 (1956). *See also Boggs v. Hargrave,* 16 Cal. 560, 564–65 (1860), in which the court held:

A valid decree in a mortgage case operates upon such interest as the mortgagor possessed in the property at the execution of the mortgage. That interest may not constitute a valid title; it may not, in fact, be of any value; and the purchaser takes that risk.

*See* A. C. Freeman, The Law of Void Judicial Sales § 41a (4th ed. 1902).

In the case at bar, Elder no longer had an interest in the subject property at the time the judgment lien was entered. Therefore, the purchaser at the foreclosure sale could not have acquired a greater interest in the property than Elder, nor could Romero.

574

### B. Necessary to Decision

■ Romero contends that the State should have raised the fact of its paramount title in the foreclosure suit, and its failure to do so bars the State from raising it now. This is not true since collateral estoppel does not require a party to raise all possible issues in a prior proceeding to prevent a bar to their subsequent litigation. *Town of Atrisco v. Monohan, supra.* The question is whether in a foreclosure suit, title to the property must be determined.

■ A foreclosure action is used to establish the priority of various liens; it does not necessarily litigate title to land.

> '[W]hat is termed a foreclosure suit is only a proceeding for the legal determination of the existence of the lien, *the ascertainment of its extent*, and the subjection to sale of the estate pledged for its satisfaction. Upon the validity and *extent* of that lien the owner of the estate, whether mortgagor or his grantee, has a right to be heard, and no valid decree for the sale of the estate can pass until this right has been afforded to him.'

*Dobbins v. Economic Gas Co.*, 182 Cal. 616, 189 P. 1073, 1077 (1920) (quoting *Boggs v. Hargrave, supra,* cited as *Boggs v. Fowler,* 16 Cal. 560 (1860)).

■ Also, the effect of a foreclosure decree need not affect the rights of those holding superior or adverse titles even if they are made defendants in the foreclosure suit. 2 Freeman, Judgments, *supra* § 700; Freeman, Void Judicial Sales, *supra* § 4a. This is especially true if the issue was not actually litigated as discussed *supra.* This rule is applicable in situations where a general allegation is made that the defendants claim some interest in the premises but that such interest, if any, is subsequent and subordinate to plaintiff's interest. Such was the allegation made by Norheim against the State; an allegation was never made that the State may have an interest due to the purchase contract with Elder, as was made in this suit.

■ The fact that the State was present in *Norheim* through representation by the Property Appraisal Department does not bind the Commissioner of Public Lands so as to defeat the paramount title the Commissioner now asserts.

One who is made a party defendant to a suit to foreclose a * * * lien may have an interest in the premises in two or more capacities, and may sometimes be bound in one capacity without being affected in the other.

2 Freeman, Judgments, *supra* § 880 at 1859; *See* Freeman, Void Judicial Sales, *supra* § 50a.

While the Property Appraisal Department of the State is bound by the *Norheim* judgment, the Commissioner is not. We hold that the State's title was not actually litigated; the only interest litigated was that of the State's tax department, an interest which was invalid. The foreclosure action merely established the priority of the liens against this property. Therefore, the district court erred in granting Romero's summary judgment on the basis of estoppel.

Inasmuch as we have disposed of the case on the issues discussed, we need not pass upon the other issues raised in the appeal.

This cause is remanded to the district court to enter judgment quieting title in the State.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE, J., concur.

FEDERICI, J., not participating.