812 P.2d 791

Sidney W. JOHNSON, Petitioner,

v.

Betty RODGERS, et al., Respondents.

No. 19613.

Supreme Court of New Mexico.

June 18, 1991.

Rehearing Denied July 17, 1991.

Robert M. Montgomery & Associates, Robert D. Montgomery, Albuquerque, for petitioner.

Hooker & Sedillo, Frank Sedillo, Albuquerque, for respondents.

## OPINION

RANSOM, Justice.

This case involves the legal efficacy of successive deeds to the same property conveyed by the New Mexico State Tax Commission. We granted certiorari to review an unpublished memorandum opinion of the court of appeals. In that opinion the court held that when a tax sale certificate for unpaid taxes was issued by the county treasurer to the state at a time when the state already owned the property by virtue of an earlier tax sale certificate, a conveyance of the state's title pursuant to the second tax sale certificate was void and a subsequent conveyance pursuant to the first certificate was the effective conveyance. We reverse and hold that, when the Commission has acquired valid title for unpaid taxes and the state later conveys the same property twice with reference to different tax sale certificates, the state conveys its interest in the property with the first deed. This is so regardless of any reference in the deed of conveyance to a particular tax sale certificate or tax deed.

Prior to the Property Tax Code of 1973, NMSA 1978, §§ 7-35-1 to 7-38-93, county treasurers annually sold to the state real property on which taxes were more than six months delinquent. *See* NMSA 1953, § 72-8-1. The sale would be noted on the tax rolls, NMSA 1953, § 72-8-6, and the treasurer would issue a "tax sale certificate" that effected the sale to the state.[1] NMSA 1941, § 76-711. For two years the sale was subject to redemption, NMSA 1953, § 72-8-9, and upon expiration of the redemption period tax deeds to the state were executed for all unredeemed property. NMSA 1953, § 72-8-15. Persons whose title or interest in the property was extinguished by the issuance of a tax deed to the state had certain rights of repurchase prior to the sale of the property by the state at private auction or by private sale.[2] NMSA 1953, § 72-8-31.

---

1. After a 1953 amendment, the treasurer prepared a record or list in lieu of a tax sale certificate. *See* NMSA 1953, § 72-8-7.

2. Since 1973, the county treasurers annually have prepared a property tax delinquency list of all property for which taxes have been delinquent for more than two years. NMSA 1978, § 7-38-61. The tax delinquency list is submitted to the taxation and revenue department in a form prescribed by regulations, and this constitutes a transfer of the property to the department for collection of delinquent taxes. The department has the responsibility and exclusive authority for collection. NMSA 1978, § 7-38-62. At the time of payment of delinquencies, the department issues a receipt, a duplicate of which is mailed to the county treasurer together with a remittance of the property taxes paid. NMSA 1978, § 7-38-63. This is noted on the property tax schedule. *Id.* The property may be sold for delinquent taxes after three years from the first date on which taxes became delinquent, as shown on the tax delinquency list. NMSA 1978, § 7-38-65. Upon receipt of payment for real property sold for delinquent taxes, the department executes and delivers a deed to the purchaser. NMSA 1978, § 7-38-70. The issuance of a tax deed may be attacked only within two years of the sale, and only by showing the property was not subject to taxation, the required notice of sale was not sent, or that the taxes were paid (or an installment agreement reached) prior to the sale. *Id.* A tax deed conveys all the former property owner's interest as of the date the state's lien arose, subject only to perfected interests as of that date. *Id.*

The dispute in this case involves patented mining claims on approximately fifty-five acres of land in Taos County. In 1984, Sidney Johnson brought suit to quiet title to the property and named as defendants Betty and Shelley Rodgers (together Rodgers), among others. Both Johnson and Rodgers claimed title under deeds from the State Tax Commission. Johnson claimed title under a deed of May 3, 1955.[3] The Johnson deed referenced a tax sale certificate issued to the state in 1950 for nonpayment of taxes in 1948. The Commission, however, already had received in 1942 a tax sale certificate to the same property for nonpayment of taxes in 1940. On December 3, 1956, the Commission conveyed the property to Rodgers pursuant to the 1942 tax sale certificate.

The district court quieted title in Johnson finding that the 1955 conveyance by the Commission gave paramount title and any deed issued thereafter by the Commission was of no effect. The court of appeals reversed, taking note of the fact that when tax officials issued the second tax sale certificate in 1950, the state already owned the property. The court of appeals stated that under *Romero v. State*, 97 N.M. 569, 642 P.2d 172 (1982), and *Schmitz v. New Mexico State Tax Commission*, 55 N.M. 320, 232 P.2d 986 (1951), if an assessment for property taxes is illegal or void, because the property was owned by the state at the time of the assessment, it follows that any sale based upon such an assessment likewise is void. In *Romero*, equitable title to certain property had reverted to the state by operation of law prior to the time tax officials assessed taxes and conveyed a tax deed to a third party. Similarly, in *Schmitz*, title had passed to the state by escheat prior to assessment and sale for nonpayment of taxes. In both of these cases, this Court determined that the assessment and subsequent sale were void because property owned by the state is not subject to taxation. *Romero*, 97 N.M. at 571–72, 642 P.2d at 174–75; *Schmitz*, 55 N.M. at 325–26, 232 P.2d at 990–91.

Johnson relies on the treatment of the question of the efficacy of successive tax deeds in *First National Bank in Albuquerque v. State*, 77 N.M. 695, 427 P.2d 225 (1967). In that case the Commission also conveyed real property twice pursuant to two different assessments and tax deeds. One party relied on a 1962 conveyance from the state, based upon 1941 taxes and a tax deed to the state in 1945. The other relied on a conveyance from the state in 1949, based upon 1942 taxes and a tax deed to the state in 1946. This Court concluded that the 1962 deed conveyed nothing, since the property was sold in 1949 and no new title had been acquired by the state in the interim. The Court stated that after 1949 the state had no interest to convey. *Id.* at 701, 427 P.2d at 231. The Court also said:

> Deeds from the State do not purport to convey interests acquired by the State under any particular tax deed. They convey the State's interest in the property. This is true even though reference to certain tax sale certificates or deeds may be contained in the conveyance by the State.

*Id.*

The Court in *First National Bank in Albuquerque* was careful to point out that because the state had not yet acquired the property in 1942 when the assessment underlying the 1949 deed was made, the validity of that assessment and tax deed was not open to question. *Id.* "This is not a case of an attempted sale of lands on which taxes had been illegally assessed because the property was owned by the State as was true in *Schmitz v. New Mexico State Tax Commission*, 55 N.M. 320, 232 P.2d 986 [1951]." *First Nat'l Bank in Albuquerque*, 77 N.M. at 701, 427 P.2d at 231. For that reason, the Court had no reason to address the question whether its ruling would have been affected by such a consideration. This is the question before us.

---

**3.** It is undisputed that this deed was duly recorded and no recording act issue is involved in this case.

■ We think that although the tax sale certificate to which the Johnson deed can be traced was issued at a time when the state already had title pursuant to an earlier certificate and tax deed, the state's conveyance to Johnson was nonetheless valid. Since the state had acquired title under a valid tax deed, the Commission was fully authorized to convey the land. This factor is sufficient to distinguish this case from that in *Romero* and *Schmitz*. The significance of this factor is suggested by the decision in *Schmitz* itself:

> The State of New Mexico having acquired no title nor any right or interest whatsoever in the land by virtue of any tax sale or tax deed, the [Tax Commission] has no power or authority whatsoever to allow plaintiff to repurchase the land, nor to allow intervenors to purchase it. The State Tax Commission's power and authority to sell and convey for the State is limited to such property as is acquired by the State under tax deed. The property involved here was not in any sense acquired by the State under tax deed, but by escheat.

*Schmitz*, 55 N.M. at 326, 232 P.2d at 990–91. *See also* NMSA 1978, § 7–38–70(D)(1) (person maintaining a claim adverse to that acquired by tax deed may challenge that deed on the ground that "the real property was not subject to taxation for the tax years for which the delinquent taxes for which it was sold were imposed").

■ Moreover, we agree with the language in *First National Bank in Albuquerque* to the effect that deeds from the state do not purport to convey interests acquired by the state under any particular tax deed, regardless of certain tax sale certificates or deeds that are referenced in the conveyance. *First Nat'l Bank in Albuquerque*, 77 N.M. at 701, 427 P.2d at 231. A deed from the state is a conveyance of its interest in land, not its interest in a particular tax deed or tax sale certificate.

For these reasons we reverse the decision of the court of appeals and remand to that court so that it may reinstate the judgment of the district court.

IT IS SO ORDERED.

SOSA, C.J., and FRANCHINI, J., concur.